## RIVES & OWEN v. WILBORNE.

1. Where the affidavit of the claimant of property levied on by execution, describes the execution, the property levied on, and when, and asserts that the right thereto is in the claimant, this is a sufficient compliance with the statute, although

the affidavit is dated on the day the sheriff's indorsement shows the execution was placed in his hands, and four days before the same was levied.

2. Where personal property is levied on by attachment, and a replevy bond executed, conditioned to have the same forthcoming to abide such judgment as may be rendered in the cause, the property cannot be levied on by an execution, the lien of which is not paramount, until it is discharged from all liability to satisfy the attachment on the judgment therein.

WRIT of Error to the Circuit Court of Sumter.

This was a trial of the right of property under the statute, in which the plaintiffs in error were the plaintiffs in execution, and the defendant the claimant. The material facts of the cause, as well as the questions of law proposed to be revised, are shewn by a bill of exceptions sealed at the instance of the plaintiffs. 1. The plaintiffs moved the circuit court to dismiss the claim on the ground that the affidavit made by the claimant was insufficient. It was verified before a justice of the peace, who attests it as of the 22d February, 1841, and it affirms that "two negroes, namely, one negro man by the name of Alfred, aged about twenty-five years, and one negro boy named Bill, aged about fifteen years, levied on as the property of Richard Wilborne, by virtue of two executions, one in favor of James Rhodes and the other in favor of Rives and Owen, that issued from the county court of Sumter county, in February, 1841, is his, the deponent's, own right and property." The motion to dismiss was overruled; and thereupon, an issue was made up under the direction of the court, and submitted to the jury, to determine whether the slave, "Bill," was subject to the plaintiff's execution. 2. On the trial, the plaintiffs called a witness, who proved that the slave in question was in the possession of the defendant in execution, at the time he was levied on. The claimant then produced three writs of attachment against the estate of the defendant in execution, issued on the 6th and 9th days of May, and the 11th of June, in the year 1840, returnable to the term of the county court of Sumter, then next succeeding, all of which were regularly levied, previous to their return, on the slave "Bill." He also introduced a replevy bond, in one of the attachments, and proved that the claimant was the defendant's surety therein, for the replevy of the slaves. The plaintiff's execution was subsequently levied. Judgments were rendered in the suits commenced by attachment, on the 8th day

of Frbruary, 1841. Thereupon, the claimant prayed the court to charge the jury, that the slave, Bill, when levied on, was in the custody of the law, by virtue of the levy of the attachments, and the proceedings thereon; and consequently, was not subject to the levy of the execution when made; this charge was given in the terms in which it was asked.

The questions now raised are, 1. Should the motion to dismiss the claim of property, have been sustained? 2. Was the charge of the court to the jury, correct?

MURPHY, for the plaintiffs in error, cited to the second point, Hagan v. Lucas, 10 Peter's Rep. 400; Pond v. Griffin, 1 Ala. Rep. N. S. 678.

BLISS and BALDWIN, for the defendant, relied upon Dunklee v. Fales, [5 N. Hamp. Rep. 527,] to show, that by the return of the slave to the defendant, after his seizure under the attachments, he became subject to the execution.

COLLIER, C. J.—The act of 1812, enacts, that when property levied on by execution shall be claimed by any person, not a party thereto, such person may make oath to such property, &c. The oath of the claimant, it is believed, conforms very fully to the statute—it describes the execution, the property levied on, and when, and asserts that the right thereto is in the claimant. The transcript of the execution, which we find in the record, is indorsed by the sheriff, received the 22d, and levied the 26th February, 1841, while the affidavit appears to have been made on the day of its reception. This discrepancy we do not regard as at all material, and if necessary, would intend that the sheriff was mistaken in the date of his levy, or the justice of the peace, in the day on which the affidavit was verified; the former is perhaps the most reasonable inference, as the condition of the claimant's bond recites the levy as having been made on the day the execution was received.

2. In respect to the second point, it has been heretofore decided, that the levy of an attachment, gives a lien to the debtor upon the property seized, and that the lien thus acquired, is not lost by the defendant's entering into the usual replevy bond, with sureties: *Further,* that before the forfeiture of the bond, the es-

tate attached, can neither be sold or levied on, by another attach‑
ment, or execution: That the property is at the risk of the debtor,
and his sureties, pending the suit, and no principle, will tolerate
any disposition of it, which will prevent them from returning it to
the sheriff, or in any other manner, defeat their lien.    It would,
therefore, seem that it cannot be taken in execution by another
creditor, either of the original debtor, or claimant.    [McRae and
Augustin v. McLean, 3 Porter's Rep. 138; Pond v. Griffin. 1 Ala.
Rep. N. S. 678.]

In Hagan v. Lucas, [10 Peters' Rep. 400,] it appears that pro‑
perty had been levied on by execution, from one of the circuit
courts in this State, and a bond given to try the right, as in the
present case; afterwards, a writ of *fieri facias* issued from the
district court of the United States, was levied on the same proper‑
ty, and a claim interposed, as the statute prescribes.    The dis‑
trict Judge was of opinion, that the proceedings in the State court
being undetermined, the property was in the custody of the law,
and not subject to the levy by the marshal.    The cause was re‑
moved by writ of error, to the supreme court of the United
States, where the judgment was affirmed.    That court held, that
the bond being conditioned for the return of the property to the
sheriff; if the right shall be adjudged against the claimant, it can‑
not be considered as a substitute for the property itself.    The
object of the legislature in requiring such a bond was, to insure
the safe keeping and faithful return of the property to the sheriff,
if its return should be required.    If the property should be ad‑
judged liable to execution, a levy on it at the suit of a third per‑
son, would occasion a forfeiture of the condition of the bond—a
result so repugnant to equity, as such a proceeding would occa‑
sion, would not be sanctioned.    *Again:* On giving the bond, the
property was placed in the possession of the claimant—it is not
withdrawn from the custody of the law, but the claimant, instead
of the sheriff, is made the custodian.    In the hands of the claim‑
ant, under the bond for its delivery to the sheriff, the property is
as free from the reach of other process, as it would have been
in the hands of the sheriff.    [See, also, 1 Show. Rep. 174; 3
Munf. Rep. 417.]    The reasoning of the court in the case cited
from Peters, applies with all force to the case at bar; for the con‑
dition of the bond, is substantially the same in each.    They both
provide for the return of the property in the event of a decision,

adverse to the claimant in the one case, and the defendant in attachment in the other.

The case of McRae and Augustin v. McLean, authorises the surety of the defendant, to return the property to the sheriff in discharge of the bond; and can this be done, if it is liable to seizure on other process? Upon the execution of the bond, the law must regard the property as in the custody of the defendant in attachment, and his surety, in order that they may comply with its condition. But it is argued for the plaintiffs in error, that by the return of the slave in question, to the possession of the defendant in attachment, the lien of the attachment was lost, and he became subject to their execution; and to sustain this argument, Dunklee v. Fales, [5 N. Hamp. Rep. 527,] has been cited. In that case the furniture attached, was permitted by the plaintiff, to be returned to the defendant's possession without any bond having been first executed for their safe keeping and delivery. The court decided, that to make a valid levy, the officer must take possession of the goods; and to retain the lien, which the attachment creates, he must keep the goods out of the possession and control of the debtor. If he permit them to go into his possession, and under his control, any other creditor may attach and hold them. This case is entirely unlike the one before us. There, the levy became ineffectual to continue the lien, because the possession of the property was returned to the debtor; here the lien was continued by the execution of the replevy bond; and as by law, the defendant in attachment might, under such circumstances, have the custody of the property, with the assent of his surety, we cannot conceive that any consequence prejudicial to the latter, can result from such possession. The possession of the debtor must be consistent with the rights of the surety, and subject to his control, so as to enable him to give effect to those rights.

The right of the surety to return the property to the sheriff, invests him with a special property in it; and to maintain that property, he must be permitted to assert a claim under the statute. It follows from this view, that the charge to the jury was correct, and the judgment of the circuit court is consequently affirmed.