# LANGDON & CO. v. BRUMBY, ADM'R.

1. The only proper issue upon the trial of the right of property under the statute, is an affirmation on the part of the plaintiff that the property in question is subject to his execution, and a denial of that fact by the defendant ; consequently a plea which alledges that the same property has been levied on at the suit of another execution creditor, a claim interposed and bond given with surety to try the right, will not be entertained, even if the proof of such facts would avail before the jury.

2. Although goods are levied on by a junior execution, and delivered to a third person, who has interposed a claim and given bond with surety as required by law, yet it will be competent to levy on the same by a *fieri facias*, the lien of which first commenced and still continues. But if the older execution is first levied and proceedings instituted to try a claim, a junior execution cannot be levied on the same property.

Writ of error to the Circuit Court of Perry.

THIS was a proceeding under the statute for the trial of the right of property. The defendants in error caused a writ of *fieri facias* issued upon a judgment recovered by them, against the " Trustees of Madison College," to be levied by the sheriff of Perry, on the apparatus supposed to belong to the defendants in execution; to which the intestate of the defendant in error interposed a claim, and entered into bond with sureties according to law. The claimant died, pending the suit, and it was revived in the name of his administrator.

An issue was made up in the usual form, referring it to the jury to determine whether the property in question was subject to the plaintiff's execution. In addition to this, the claimant pleaded, that the identical apparatus had been previously levied on by a *fieri facias*, at the suit of Beverly Crawford, against the defendant in execution, that the intestate had regularly interposed a claim to the same, which was pending in the Circuit Court of Perry, at the time of, and long after the levy of the execution, and the return of the claim in the present case, &c. To this plea the plaintiff demurred, and his demurrer being overruled, he replied that the *fieri facias* at the suit of L. & C. C. Langdon & Co. first issued and acquired a prior lien, to that of Beverly Crawford, which was first levied. The claimant demurred to this replication, his demurrer was likewise sustained, and the Court adjudged that the claim be quashed; that the levy of the execution on the apparatus is not sufficient to enable the plaintiff in execution to maintain a trial of the right of property in relation to the same; and that the claimant recover of the plaintiff in execution his costs.

A. GRAHAM, (of Perry,) with whom was E. W. PECK and L. CLARK, for the plaintiffs in error, contended that the previous levy and claim of property, did not prevent the levy of the plaintiff's execution; especially as being older in date it created a superior lien. [2 Porter's Rep. 5; 3 Ib. 138; 1 Ala. Rep. N. S. 678; 2 Ib. 684; 5 Mass. Rep. 271; 1 McMullan's Rep. 000; 10 Peter's, 404; 13 Pet. Rep. 151.]

A. F. HOPKINS, for the defendant in error. The matter stated in the plea is a bar to the proceeding by the plaintiff—it shows that at the time their execution was levied, the apparatus was in the custody of the law, and not subject to seizure

and sale. [4 Bac. Ab. 389 ; 10 Pet. Rep. 400 ; 3 Porter's Rep. 138.] Rives & Owen v. Willborne, 6 Ala. Rep. 45, is a case directly in point. If this view be correct, it is immaterial which of the parties at whose suit the apparatus was levied on, first caused their execution to be issued. The question of priority of lien does not arise.

COLLIER, C. J.—In the P. & M. Bank v. Willis & Co. 5 Ala. Rep. 770, it was held, that although the statute directed the Court to require the parties to make up an issue, under such rules as it might prescribe for the trial of the question of right, yet the only proper issue in all such cases was an affirmation on the part of the plaintiff, that the property levied on was subject to the execution, and a denial of that fact by the claimant. In the present case, an issue was thus formed, and the claimant was then allowed to plead, that the property was not subject to the plaintiff's execution, for certain reasons, which are specially stated. The effect of this plea was to prevent a trial upon the general question of the liability of the apparatus, to the satisfaction of the plaintiffs execution, and limit the inquiries to a single point, either of law or fact, according as the plaintiff might elect to treat it. This could not be done by any proceeding interposed by the claimant. The statute entitled the plaintiff to a jury trial, if the cause was in Court in a condition to be tried, and the case cited, shows how the issue shall be framed. Here the Court determined that the levy of the execution did not entitle the plaintiff to a trial of the right of property, and rendered a judgment against him for costs.

It is no answer to this view to say, the facts set forth in the plea, if true, show that the property in question is not liable to the plaintiff's execution, and that the demurrer is an admission of their truth. A demurrer admits the truth of the facts, if well pleaded, but presents to the Court the decision of their legal sufficiency to bar the action, and the question whether they are interposed in such a manner as to make them available. If the determination be favorable to the party demurring upon either of these points, the plea should be adjudged bad. We have seen that the plea, irrespective of its extrinsic merits, could not be entertained.

In Rives & Owen v. Willborne, 6 Ala. Rep. 45, an execution was levied on a slave, a claim made by a third person, and a bond given to try the right. The cause was tried by a jury upon an issue in the usual form. On the trial, the claimant proved that some months previous to the levy of the execution the slave in question was seized under three attachments, and replevy bonds given for his forthcoming according to law. In these bonds the claimant was a surety, and as such interposed his claim to arrest a sale under the execution. The Circuit Court charged the jury, that the slave when levied on was in custody of the law by virtue of the levy of the attachments and proceedings thereon; and consequently was not subject to the levy of the execution when it was made.

In the case cited it appears, that judgments were rendered in the suits commenced by attachment two weeks previous to the levy of the execution, but it was not shown that any proceedings had been had on the judgments. This Court laid no stress upon the proceedings had in the attachment, subsequent to the execution of the replevy bonds, but considering that the effect of these was to withdraw the slave from a liability to seizure and sale, affirmed the judgment of the Court below.

If the special plea and replication state the facts of this case correctly, it differs from Rives & Owen v. Willborne, in this— here, the process under which the property was levied on, created a prior lien to that under which the levy had been made, and bond previously given to try the right; there, the claim had been interposed to stop a sale and try the right, upon the ground that the property had been placed in the custody of the law in virtue of proceedings which operated a paramount lien.

By the second section of the act of 1838, " relative to the satisfaction of executions," it is enacted, that " the lien created by the delivery of an execution from a Court of record to the sheriff, shall continue to bind the property of the defendant as between different judgment creditors in the Courts of record in this State, in the following manner, viz : if a term shall elapse after the return of the first execution, before an *alias* shall be be sued out and delivered to the sheriff, the lien created by the delivery of the first writ of execution, shall be cancelled and of no avail; but if a term shall not have elapsed, and the *alias*

shall be delivered to the sheriff before the sale of property, under a junior execution in favor of another creditor, the lien shall continue, notwithstanding the *alias* may not have been delivered until after such junior execution; but if such *alias* shall not be delivered, until after the sale under such junior execution, the lien of the latter shall prevail." [Clay's Dig. 209, § 43.] The eighth section of the act of 1807, "concerning executions, &c.," declares that a *fieri facias* or other writ of execution, shall only bind the property of the goods against which such writ is sued forth, from the time such writ shall be delivered to the sheriff, &c. [Clay's Dig. 208, § 41.]

The view we have taken of the plea as applied to the present case, will relieve us from the necessity of giving to the replication a critical examination; and without inquiring whether the plaintiff's execution exerted a lien paramount to that of Crawford's, we will consider the question in hand, upon the hypothesis that such was its effect.

By the common law, the goods of a party against whom a *fieri facias* issued, were bound as against the party himself, and all claiming by assignment from, or by representation under him, from the test of the writ. The act of 1807, did not create the right of lien, but rather limited its retrospective operation, by declaring that it should only become effective from the time the writ is placed in the sheriff's hands. This lien is a right so much respected by the law, that where it once attaches it will not be divested, though the property of the debtor has been seized under a previous execution. And although the original execution may not have been levied, yet if the plaintiff continues its efficacy by causing an *alias*, &c., to be regularly issued from term to term, his lien overreaches a *fieri facias* of a younger date, which has been actually levied, and if in the sheriff's, hands will be entitled to the proceeds of the sale.

In the case before us, if the plaintiff's execution first operated a lien upon the estate of the defendant in execution, then they would be entitled to the proceeds of the property in question, if they caused it to be regularly issued as the act of 1828 requires, should Crawford succeed in condemning it. The claimant, by the terms of his bond, stipulated for the return of

8

the property, in the event that he was unsuccessful in the assertion of his claim. Notwithstanding these positive terms, the claimant would not be held to a performance of the condition of his bond, if the property should be wrested from his possession by the authority of law, which he could not control. This principle would apply where the property was seized under an execution, which exerted a superior lien. Of course, this reasoning is founded upon the supposition, that the goods in dispute belonged to the debtor; for if they were the claimants, neither of the execution creditors, could insist upon their appropriation. From this view of the law it results, that although goods are levied on by a junior execution, and delivered to a claimant, who has interposed a claim and given bond with surety as required by law, yet such proceeding will not prevent the levy of a *fieri facias*, the lien of which commenced first and still continues.

The same principles will not apply where the senior *fieri facias* is first levied, and under it, proceedings are instituted to try a claim. There it would be no answer for the claimant to say, that the goods had been taken from his custody by a junior execution; and, in such case, if he were unwilling or unable to interpose a second claim, he would be answerable upon his bond if they should be condemned, and he could not not produce them.

In respect to the case of Rives & Owen v. Wilborne, speaking for myself alone, I would remark that I have bestowed much reflection upon the principle upon which it rests. I have frequently thought and conversed about it since the decision of Hagan v. Lucas, 10 Pet. Rep. 400. I have examined our statutes in respect to the trial of the right of property—I have scanned the arguments that have suggested themselves to me, or have been urged by others, both for and against that case; and am free to declare that on either side they are potent and embarrassing. In favor of it, it is said that the opposite conclusion would be oppressive and sometimes utterly destructive of the rights of the honest claimant; against it, is said, that it enables the debtor by a combination with a third person to interpose a claim through dishonest motives, only to withdraw the property from the just demands of the creditors. In this *equilibrium* of the argument upon consequences, the safe

course is to consult the written law, the nature, design and character of the proceeding for which it provides, and regulates. If untrammelled by legislation, I have no doubt, but rules upon this subject might be laid down, embracing a more enlarged equity, and more generally promotive of justice. But keeping in view our statutes, I am persuaded that the case referred to, is, as consonant to the provisions as any decision we would be likely to make, if the question were *res integra.* I have not, therefore, the slightest wish to prescribe any other limitation upon the general terms in which we have heretofore expressed ourselves, than that already stated in this opinion.

Without stopping to recapitulate, it is enough to add, that the judgment of the Circuit Court is reversed, and the cause remanded.