## DOREMUS, SUYDAM & Co. v. WALKER.

1. The plaintiff recovered a judgment against the defendant, on which a *fieri facias* was issued, and levied on personal property, to which a third person interposed a claim, and executed a bond with security to try the right as provided by statute; afterwards the defendant filed his petition in bankruptcy, and in the regular course of proceeding was declared a bankrupt and discharged, pursuant to the act of Congress of 1841; on motion of the defendant the levy of the *fi. fa.* was discharged and set aside: *Held*, that the proceeding to try the right of property did not destroy the lien of the *fi. fa.;* at most, it was only in abeyance during their pendency, would be revived and might be coerced as soon as the claim was determined to be indefensible: *Further*, that the lien of a judgment, or *fi. fa.* is preserved according to the right of the creditor at the time the bankruptcy is established; if the lien is then absolute, it completely overrides the decree, and the creditor will be let into the enjoyment of its fruits.

Writ of error to the Circuit Court of Lowndes.

THIS was a motion to quash the levy made and indorsed by the sheriff on a writ of *fieri facias*. The facts, so far as material, may be thus condensed: A judgment was rendered on the 4th April, 1842, on which the *fi. fa.* in question was received the 7th May, 1842, and returned by the sheriff that he had levied the same on the 15th June next thereafter, on certain slaves (naming them,) that a claim had been interposed by a third person, and bond executed, with surety, to try the right.

On the 15th August, 1842, the defendant filed his petition in the District Court of the United States sitting at Mobile, and on the second of May, 1843, he was declared a bankrupt, and fully discharged from all the debts which he owed at the time of the exhibition of his petition, pursuant to the provisions of the Bankrupt act of 1841. All which were vouched by the record of the pro ceedings in the District Court, accompanied with the defendant's certificate &c. Thereupon it was ordered that the levy in question be discharged, set aside, and for nothing held, &c.

R. SAFFOLD, with whom was BOLING, for the plaintiff in error,

made the following points :   1. The discharge of the defendant under the bankrupt law, did not impair the lien which the plaintiffs acquired by their judgment, execution and levy.   [2 Caine's Rep. 300;  Ex parte Foster, 5 Law Rep. 55;  In the matter of Cook, id. 443-4-5-6 ;  Kittredge v. Warren, 7 id.  77 ;  Kittredge v. Emerson, id.  312-3 ;  Dutton & Richardson v. Freeman, 5 id. 447, 452;  Ex parte The City Bank of New Orleans, 7 Law Rep.  553;  Mosby v. Steele & Metcalf, 7 Ala. Rep.  249 ; Owen on Bankr. 181;  Stead v. Gaiscoigne, 8 Taunt. Rep. 527. See also, 1 Wash. C. C. Rep. 29; Clay's Dig. 208.]

A. F. Hopkins and T. Williams, for the defendant.   The levy of a *fieri facias* on personal property, merely invests the sheriff with a special, while the general property remains with the defendant in execution.   [8 Johns. Rep. 486 ;  Law Rep. for June, '42, p. 65-6-7.]   And where a claim is interposed by a third person, and bond executed, with surety, as prescribed by the statute, the special property of the sheriff is thereby divested, and the possession revested in the defendant, from whom it was taken.   Pending the claim, the sheriff may levy on other property, which could not be done, if the lien on the property claimed still continued.   [2 Porter's Rep. 51-2.]

The lien, after the claim, may be assimilated to the lien of an attachment, after property attached has been replevied ; in the one case it depends upon the judgment of condemnation, in the other upon the fact whether a judgment is recovered by the plaintiff.   And the lien being in this imperfect state, the property, so far as the bankrupt is interested in it, is transferred to the assignee in bankruptcy, who may litigate the right to it, and insist upon devoting it to the bankrupt's debts.   [Law Rep. June, 1842, p. 55, 64-5-6-7, 70, 72-3.]   If the plaintiffs had a lien, the decree in bankruptcy would prevent them from prosecuting it in a State court ; but under the bankrupt act, the District Court should be resorted to for its protection.   [Law Rep. June, 1842, p. 72-3 ; id. February, 1845, 120.]   The decree placing the property in the custody and under the supervision of that Court.

The object of an execution is to collect the debt, and if the defendant is discharged from all his debts before it is satisfied, the execution may be quashed.

If the defendant had sued out a writ of error and executed the

usual bond, the levy would have been discharged and the claim consequent thereon, could not have been tried ; but the bond of the claimant would become inoperative.

By the 3d section of the bankrupt act all the estate of the bankrupt, vests in the assignee, from the time his petition is filed. It is not denied, that the assignee takes subject to all the rights, equities, &c. of third persons. [9 Ves. Rep. 100; Law Rep. Nov. 1842, p. 308.] But it is insisted, that liens by operation of law, as judgment, execution, &c., are entirely. divested by the decree which authorizes the certificate of discharge to issue. [See 5 Ala. Rep. 676, 810 ; Law Rep. May, 1842, p. 19.]

COLLIER, C. J.—The eighth section of the act of 1807, "concerning executions," &c. enacts that " No writ of *fieri facias*, or other writ of execution, shall bind the property of the goods against which such writ is sued forth, but from the time that such writ shall be delivered to the sheriff," &c. " to be executed," &c. [Clay's Dig. 208, § 41.]

By the act of 1812, it is provided, that where a sheriff shall levy an execution on property claimed by a third person, the claimant shall make oath to the same, and give bond to the plaintiff, with surety in a sum equal to the amount of the execution; conditioned to pay the plaintiff all damages which the jury, on the trial of the right of property, may assess against him, in case it should appear that the claim was made for delay, &c. *It is provided further*, that the sheriff shall return the property levied on, to the person out of whose possession the same was taken, upon such person entering into bond with surety, to the plaintiff in execution, in double the amount of the debt and costs, conditioned for the delivery of the property to the sheriff, whenever the claim of the property so taken shall be determined by the Court; and if the obligors in the last mentioned bond shall neglect or refuse to deliver the property to the sheriff, the sheriff shall forthwith return the bond to the clerk's office of the Circuit Court; and the same " shall have the force and effect of a judgment, and execution may be awarded by the Court against all or any of the obligors having ten days notice thereof." The execution, or a copy thereof, (where it is issued from another county,) together with the papers pertaining to the claim, are returnable to the Circuit Court of the county where the *fieri facias* was levied.

Doremus, Suydam & Co. v. Walker.

[Clay's Dig. 210-11, 213, § 63.] A subsequent statute, passed in 1828, repeals so much of the pre-existing law as required two bonds to be taken for the trial of the right of property, and enacts that the claimant shall execute a bond with surety, " payable to the plaintiff in execution, and conditioned for the forthcoming of the property, if the same be found liable to the execution, and for the payment of such costs and damages as shall be recovered for putting in the claim for delay." *Further*, it is made the duty of the jury, in all cases when they find the property subject to execution, " to find the value of each article separately ; and if the claimant shall fail to deliver the same, or any part thereof, when required by the sheriff, it shall be the duty of the sheriff to go to the clerk, and indorse such failure on the bond by him returned, with a copy of the execution." It is then declared that the bond shall have the force of a judgment, and the clerk shall issue execution against the claimant and his sureties, for the value of the property not delivered, &c. And by this latter enactment *it is also provided, that proceedings for the trial of the right of property shall in no case prevent the plaintiff from going on to make his money out of other property than that that levied on and claimed, if to be found.* Act of 1828, Clay's Dig. 213-4, §§ 62, 64, 67, 68.

The construction of the act of 1807 has been uniform, that the delivery of a *fieri facias* to a sheriff, or other proper executive officer, *eo instanti* operates a lien upon the goods of the defendant, and *takes from him the right to dispose of them free from the legal incumbrance.* And the creditor who has outstripped all other competitors in the race of diligence, cannot be defeated, or overreached, by a junior *fieri facias* unless he has allowed his execution to become dormant, or has omitted to sue it regularly from term to term.

It may be conceded that the seizure of goods, under legal process, merely invests the officer with a special property, and having disposed of them as the law provides, his estate is at an end. Such a concession cannot benefit or prejudice either party. It proves nothing in respect to the lien, which the plaintiff in execution acquires. The sheriff may part with the possession, without in any manner affecting the plaintiff's right ; and we apprehend, such has been the effect of delivering the slaves levied on, in this case, into other hands, upon reciving a bond stipulating for

their return, in the event that they should be adjudged to be the property of the defendant. The trial of the right of property as provided by statute, is *quasi* a proceeding *in rem*—the specific thing is to be restored if the claimant shall be unsuccessful. This, we think, cannot entirely destroy the lien; it may keep it in abeyance, but its active energy will revive, and may be coerced, so soon as the claim interposed shall be determined to be indefensible.

It might, if necessary, be worthy of inquiry, whether the act of 1828, in modifying the law so as to require a single bond to be executed, embracing substantially, the conditions of both the bonds previously necessary, does not by implication require the sheriff to deliver the property levied on, to the claimant instead of the defendant in execution. Is this not clearly inferrible, from Rives & Owen v. Willborne, 6 Ala. Rep. 45, and Langdon & Co. v. Brumby's Adm'r, 7 id. 53 ? Be this as it may, it was directly decided in Mills v. Williams, et al. (2 Stewt. & P. Rep. 390,) that an execution does not lose any lien acquired by it, if it is subsequently suspended in its operation on particular property, by proceedings to try the right, even under the act of 1812.

So in Campbell v. Spence, et al. 4 Ala. Rep. 543, we say— " where the right to issue execution is merely suspended, as in the case of forthcoming bonds, and bonds to try the right of property," the lien of the judgment will continue. See also McRae and Augustin v. McLean, 3 Porter's Rep. 138; Hopkins v. Land, 4 Ala. Rep. 427 ; Bartlett & Waring v. Doe ex dem. Gayle & Phillips, 6 Ala. Rep. 305, and cases there cited.

It is argued for the defendant in error, that although the lien may not be impaired by the claim of property, that the third section of the bankrupt law of 1841, vests all the property and rights of property, &c. of the bankrupt in the assignee, and that the eleventh section, and the last *proviso* to the second section, do not exempt from its operation liens created by act of law ; and if they do, such lien must be made available through the instrumentality of the District Court. The third section certainly employs terms of very extensive meaning, and the eleventh, and proviso to the second, uses language sufficiently broad to embrace liens, created either by the law, or act of the parties.

Doremus, Suydam & Co. v. Walker.

In Ex parte Foster, 5 Law Reporter, 55, *Mr. Justice Story*, says, that an attachment for the recovery of a debt under the laws of Massachusetts, when levied, does not create such an absolute lien, as is entitled to protection, and priority, under the bankrupt act of Congress, but gives a contingent lien, dependent upon the creditor's obtaining a judgment. That if the debtor should be decreed a bankrupt, and receive a discharge under the act, that discharge could be pleaded as a good bar to the suit, in the nature of a plea *puis darrein continuance ;* and therefore under such circumstances ought to prevent the plaintiff from obtaining a priority of lien over the general creditors of the defendant, on the property attached in his suit. " Consequently," says the learned judge, " the creditor ought to be enjoined against farther proceedings in his suit, except so far as the District Court should allow, until it should be ascertained whether the debtor obtained his discharge or not."

But after judgment obtained, it was conceded, that no injunction should be awarded. " The proceedings in bankruptcy after the judgment, can have no effect whatsoever upon the judgment, or upon the property attached in the suit." The creditor's right is then made perfect, being no longer conditional, or contingent, but has attached absolutely to the property ; and the Court has no authority to deprive him, or by an injunction to obstruct the proceedings on his execution. If the bankrupt obtains his discharge it would be no defence to the due execution and discharge of that judgment, in the regular course of proceeding thereon ; for the debtor, after judgment, has no day in Court to plead any bar or defence. In the matter of Cook, 5 Law Reporter 443. See also Martin v. Martin, 1 Ves. Rep. 211-3 ; Lea v. Parke, 1 Kean's Rep. 724.]

In Kittredge v. Warren, 5 Law Reporter, 77, the Superior Court of judicature of New Hampshire, in a well considered opinion, determine that an attachment of property upon mesne process *bona fide* made, before any act of bankruptcy, or petition by the debtor, is a lien upon property, valid by the laws of the State; and within the proviso of the second section of the bankrupt act of 1841. That the means of the attachment being saved by the *proviso*, the means of making it effectual are also saved: and the certificate of discharge of the bankrupt cannot, when pleaded, operate as an absolute bar to the further maintenance of the ac-

tion.   If pleaded, the plaintiff may reply the existence of the at-
tachment, in which case a special judgment will be entered, and
execution issued against the property attached.

The District Court of Maine, in Smith, assignee, v. Gordon and
others, 6 Law Reporter, 313, recognize the law as laid down in
Foster and in Cook's cases, holding, that after a lien upon the re-
alty of the debtor, by a judgment, or upon his personal estate by
a *fieri facias*, a decree in bankruptcy subsequently rendered can-
not defeat it.   In the same case, it was decided, that although all
the property, &c. of the bankrupt passed to the assignee, yet the
assignee is not bound in all cases to take possession of every
part of it.   If it would be rather a burden than a benefit to the
estate, he may allow it to remain with the bankrupt, and if the
assignee elects to take it, he must do so in a reasonable time; for
if he lies by for an unreasonable time, and allows third persons
in the prosecution of their rights to acquire a lien on the proper-
ty, he will be held by such delay to have made his election not
to take.

In Ex parte The City Bank of New Orleans, 3 How. U. S.
Rep. the following question arose : What is the true nature and
extent of the jurisdiction of the District Court, sitting in bankrupt-
cy?   It was admitted, " that independent of the Bankrupt act of
1841, the District Courts of the United States possess no equity
jurisdiction whatsoever ; for the previous legislation of Congress
conferred no such authority upon them.   Whatever jurisdiction,
therefore, they now possess, is wholly derived from that act."
The Court say, there is no doubt that liens, mortgages and other
securities are within the purview of the last *proviso* of the second
section, so far as they are valid by the State laws, and are not to
be annulled, destroyed or impaired, under the proceedings in
bankruptcy; but they are to be held of equal obligation and va-
lidity in the Courts of the United States, as they would be in the
State Courts.   *Further,* " We entertain no doubt, that under the
provisions of the sixth section of the act, the District Court does
possess full jurisdiction to suspend or control such proceedings in
the State Courts, not by acting on the Courts, over which it pos-
sesses no authority, but by acting upon the parties through the
instrumentality of an injunction, or other remedial proceedings in
equity, upon due application made by the assignee, a proper case
being laid before the Court requiring such interference."   But it

was said, that although the District Court does not possess such a jurisdiction, there is nothing in the act which requires that it shall in all cases be absolutely exercised. "On the contrary, where suits are pending in the State Courts, and there is nothing in them which requires the equitable interference of the District Court, to prevent any mischief or wrong to other creditors under the bankruptcy, or any waste or misapplication of the assets, the parties may well be permitted to proceed in such suits, and consummate them by proper decrees, and judgments; especially where there is no suggestion of any fraud, or injustice, on the part of the plaintiffs in those suits. The act itself contemplates, that such suits may be prosecuted, and further proceedings had in the State courts; for the assignee is, by the third section, authorized to sue for and defend the property vested in him under the bankruptcy, " subject to the orders and directions of the District Court;" "and all suits at law and in equity then pending, in which such bankrupt is a party, may be prosecuted and defended by such assignee to its final conclusion, in the same way and manner, and with the same effect as they might have been by the bankrupt."

We have cited these decisions thus at length, because the provisions of the bankrupt law have not, to any great extent, been drawn in question before us, and every case that arises, being most probably decisive of others, we deem it peculiarly proper to proceed with great caution. The case before us is certainly one of no difficulty. Here, upon motion of the defendant in execution, the levy of a *fieri facias,* which operated as a lien before he was declared a bankrupt, after a decree and certificate of discharge, is quashed. The property, rights of property, &c. of a bankrupt, we have seen, all passed to the assignee, on whom it devolved to prosecute and defend all suits pending against him. The application for the benefit of the bankrupt act, did not invest the debtor with other rights as it respects the property, &c. yielded up by him, than he previously possessed, and it would not be allowable, at his instance, to vacate the levy of process, after his bankruptcy was established, for a cause that would not have been previously available.

While it has been held, that the assignee may, by an injunction, or some other remedial proceeding in equity, arrest litigation, to

which the bankrupt is a party in the State Courts, it is conceded that there is nothing so potent in a petition in bankruptcy, and the judicial action in such suit, as to inhibit the State tribunals from entertaining a suit, to which the bankrupt or his assignee is a party. But until the extraordinary power, which it is said the act of Congress has conferred upon the assignee and the District Court, is put in requisition, there is nothing to impede the regular course of procedure in the State Courts.

We have seen that the lien of a judgment is recognized as operative against the assignee, as it respects the real property of the bankrupt, and that the personalty will be bound by the execution. In either case the lien is preserved according to the rights of the creditor at the time the bankruptcy is established. If the lien is then absolute, it completely overrides the decree, and the creditor will be let in, to the enjoyment of its fruits. This being the case, neither the bankrupt or his assignee could vacate the proceedings under the *fieri facias* by moving to quash the levy, unless such a motion was founded upon something more than is shown by the record.

It does not even appear that the bankrupt's schedule embraced the property levied on, or that the assignee, as such, asserted any claim to it, and (if necessary) we should perhaps infer from the record, that the schedule did not include it, as the claim had been regularly interposed, before the petition in bankruptcy, of the defendant, was filed. But be this as it may, it is sufficiently shown, that the mere fact of the defendant being a certificated bankrupt, furnished no warrant for quashing the levy. The judgment of the Circuit Court, rendered on the defendant's motion, is consequently reversed, and the cause remanded.