# Williams & Fowler v. Dismukes.

*Bill in Equity for the Appointment of a Receiver, and to enjoin the Prosecution of a Suit at Law.*

1. *Conflict of jurisdiction; when property in gremio legis.*—Property which is in *gremio legis* through the process of one court, is beyond the reach of seizure under the order of process of another court of co-ordinate jurisdiction and powers; and property on which an attachment at law has been levied, and which has been delivered to a claimant upon his interposition of a claim and execution of a claim bond, is in the custody of the law, and a court of equity can not interfere with the custody and control of the law court by appointing a receiver for such property, at the instance of other creditors, except in the assertion of a lien paramount to the demand upon which the previous possession was taken and is held.

2. *When bill to enjoin the prosecution of a suit at law without equity.* Where a writ of attachment issued out of a court of law is levied upon property, and upon the institution of a claim thereto and the execution of a claim bond, the property is delivered to the claimant, and, upon its being subsequently attached by other creditors of the claimant's alleged fraudulent vendor, a detinue suit is instituted by the claimant to recover the property levied upon under the second attachment from the sheriff, a bill filed by the last attaching creditors to enjoin the prosecution of the suit for the recovery of the property by the claimant and from asserting his claim to such property, is without equity and should be dismissed.

3. *Same; for what purpose such a bill contains equity.*—Where an attachment from a court of law is levied upon property, which is deliv-

[Williams & Fowler v. Dismukes.]

ered to a claimant upon his interposition of a claim and execution of a claim bond, and, upon its being subsequently levied upon under attachments sued out by other creditors of claimant's alleged fraudulent vendor, the claimant institutes a detinue suit against the sheriff to recover said property in his possession under the levy of the second attachment, a bill filed by the last attaching creditors, alleging that the sale of the said property to the claimant was fraudulent and void as against complainants and other creditors of claimant's vendor, while without equity so far as it seeks the appointment of a receiver of the property levied upon, and to enjoin the claimant from prosecuting his claim to such property, the said bill has equity and can be maintained in order to determine the complainants' abstract rights in respect of the property of their debtor, alleged to have been fraudulently sold and conveyed, as against the claimant, the alleged fraudulent purchaser thereof; and if the evidence sustains the averments of the bill, the complainants will be entitled to a decree subjecting to their demands all of said property, if any, remaining in the hands of the claimant when he shall cease to hold it under the claim bond.

APPEAL from the Chancery Court of Cullman.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on December 15, 1892, by the appellees, as creditors of B. R. Williams & Sons.

It was averred in the bill, that prior to December 1, 1892, B. R. Williams & Sons, a firm composed of B. R. Williams, H. H. Williams and R. L. Williams, were merchants doing a general merchandise business in the town of Cullman, and as such merchants contracted debts for goods and merchandise sold to them by the complainants, respectively; that on November 30, 1892, B. R. Williams & Sons, having become insolvent, sold their stock of goods to Thomas B. Williams and John J. Fowler, on an alleged consideration of not exceeding $6,700, while the stock of merchandise so sold was reasonably worth not less than $12,000; that Thomas B. Williams was the younger son of B. R. Williams, and J. J. Fowler was a clerk in the store of B. R. Williams & Sons at the time of the sale; that the consideration claimed by the parties was the payment of a small indebtedness pretended to be due to said Thomas B. Williams and J. J. Fowler by the firm of B. R. Williams & Sons, and a promise on the part of Thomas B. Williams and J. J. Fowler to pay certain specified debts of B. R. Williams & Sons to their creditors other than complainants, which debts were simulated. It was further averred that at the time of the alleged sale by Williams

& Sons, and the purchase by Williams and Fowler, of the stock of goods, that the said Thomas B. Williams and J. J. Fowler were insolvent, and had no property above their exemptions; and that the alleged sale was made by B. R. Williams & Sons for the purpose and with the intent of hindering, delaying and defrauding their creditors. The bill further averred that on December 3, 1892, the Memphis Grocery Company sued out an attachment in the circuit court of Cullman county against Williams & Sons for the sum of $606.25; that this attachment was levied by the sheriff upon the stock of goods which was in the possession of Williams & Fowler, and that, upon the sheriff's taking possession of said property, Williams & Fowler propounded a claim thereto, and upon the execution of a claim bond, the goods were returned to them; that after the execution of said claim bond, and after Williams & Fowler had taken possession of the goods thereunder, the complainants sued out, respectively, writs of attachment against B. R. Williams & Sons, and placed the same in the hands of the sheriff, who levied them upon said goods; that after the suing out of the attachments by the complainants, Williams & Fowler instituted a detinue suit against the sheriff to recover the possession of the property which had been levied upon by him under the attachments of complainants, and notwithstanding the prosecution by Williams & Fowler of said action of detinue, they are threatening to make a motion to set aside the levy of the attachments sued out by complainants upon the grounds that, at the time of said levy, Williams & Fowler held the property under a claim bond which was duly executed by them, and the property was, therefore, in the custody of the law, and that the levy upon it under such circumstances was illegal.

The prayer of the bill was that an injunction be issued, restraining Williams & Fowler from the prosecution of the detinue suit against the sheriff, that a receiver be appointed to take charge of the stock of goods, wares, and merchandise claimed by Williams & Fowler; that an account be taken to ascertain the amounts due complainants, respectively, from B. R. Williams & Sons; that the sale by B. R. Williams & Sons to Williams & Fowler be set aside and annulled as fraudulent, and that the goods or their proceeds be subjected to the payment of com-

plainants' debts.   The individual persons composing the
firm of B. R. Williams & Sons, the Memphis Grocery
Company, and Thomas B. Williams, J. J. Fowler, and
the sureties on their claim bond are made parties defend-
ant.

The respondents moved to dismiss the bill for the
want of equity, assigning ten grounds for said motion,
which may be summarized as follows :   1st. That the
appellees had an adequate remedy at law.    2d. That a
court of law had assumed jurisdiction of the property
involved in this controversy, and of the parties to this
bill.   3d. That the complainants in said bill did not set
up any lien superior to the claim of Fowler and Wil-
liams.    4th. That the complainants did not show in
their bill that they have any lien upon the property in-
volved in the controversy.   5th. That the complainants
in said bill seek to invoke the aid of a court of chancery
to enable them to obtain the benefit of the wrongful levy
of the attachments upon the property in controversy,
when said goods were in the custody of the law.

Upon the submission of the cause, upon the motion to
dismiss the bill for want of equity, the chancellor over-
ruled said motion.   This decree is appealed from, and
the same is here assigned as error.

GEORGE H. PARKER and LUSK & BELL, for appellants.
1.   Where personal property is seized under legal pro-
cess, and a claim is interposed by a third party, who
gives bond for a trial of the right of property under the
statute, the property is regarded as in the custody of
the law, until the termination of the suit for the trial of
the right of property.—*Rapier v. Gulf City Paper Co.*, 64
Ala. 330 ; *Little v. Rankin & Co.*, 80 Ala. 316 ; *Cordaman
v. Malone*, 63 Ala. 556 ; *Langdon v. Brumby*, 7 Ala. 53 ;
*Kemp v. Porter*, 7 Ala. 138 ; *Dollins v. Lindsey*, 89 Ala.
217.
2.   The property which had been attached, and to
which a claim suit had been interposed, was in the cus-
tody of the law, and it was beyond the power of the
court of chancery to take it away from the custody of
the law court and adjudicate upon it.   It would be alike
prejudicial to the rights of the claimants and their sure-
ties, and to the previously acquired jurisdiction of the
law court over the *res*, which is the subject of contention.

[Williams & Fowler v. Dismukes.]

1 Freeman on Executions, § 204, n 2; *Plume &c. Mfg. Co. v. Caldwell*, 29 Amer. St. Rep. 310, and note.

3. The chancellor, and the appellees here, will, and did, rely, upon the case of *Sackhoff v. Vandergrift*, 98 Ala. 192, but in that case this court distinctly say, that the question presented in this record is not decided. In that case, the decision is based upon the fact that both the attachment levied upon the goods and the bill were in the same court, and that the court could mould its decree so as to protect parties. In the case at bar, the proceedings are in different courts and different jurisdictions, and this case comes directly under the case of *Dollins v. Lindsey*, 89 Ala. 217.

4. Here we have the complainants experimenting with the different courts, to see where they will stand the best chance to proceed. They are seeking at the same time to condemn the same property in two different tribunals. They elected by issuing their attachments in a court of law to abide by that tribunal, and they should be held to their election. They are estopped by their acts from proceeding in the chancery court about the same identical property.

5. The real cause of complaint, if any, on account of the amount of property obtained by the claimants upon their bond, is against the officer who made the levy, for making an excessive levy. The wrong of the officer should not be visited on the claimants. They did no wrong and violated no law, but as alleged in the bill, they followed the statute in such cases. If the officer made an excessive levy, and from the allegations in the bill he did, the remedy is against him, the one who committed the wrong, and not against the one who followed the law and did right.—*Little v. Rankin & Co.*, 80 Ala. 316; *Gay, Hardie & Co. v. Briarfield Coal & Iron Co.*, 94 Ala. 317; *Dollins v. Lindsey*, 89 Ala. 217.

WHITE & HOWZE and CABANISS & WEAKLEY, *contra.*
1. It has been many times decided by the Supreme Court of this State, that a levy upon goods in the hands of a claimant is illegal.—*Rives v. Wilborne*, 6 Ala. 145; *Langdon v. Brumby*, 7 Ala. 53; *Kemp v. Porter*, 7 Ala. 138; *McLemore v. Benbow*, 19 Ala. 76; *Cordaman v. Malone*, 63 Ala. 556; *Scarborough v. Malone*, 67 Ala. 570. Such levy renders the sheriff making the same liable to

[Williams & Fowler v. Dismukes.]

the claimants in the first attachment.—*Cordaman v. Ma lone*, 63 Ala. 556. And such levy will be set aside o his motion.—*Powell v. Rankin*, 80 Ala. 316. Such motio will necessarily be allowed, because the levy was illega and the sheriff guilty of a misfeasance in office in mak ing it, and it is, therefore, impossible to maintain it.—*Scar borough v. Malone*, 67 Ala. 570 ; *McLemore v. Benbow* 9 Ala. 76.

In *McLemore v. Benbow, supra*, there was a motion t quash the execution on the ground that the propert was in the hands of the claimant, and it was sustained the court saying that the property, although in fact i the posssession of the claimant, was nevertheless con sidered in the custody of the law. In that case it wa also argued that the court would not act on the motion until after the execution was returned ; this position was held unsound. It will thus be seen that there is absolutely no defense at law to the action of Williams & Fowler, for the levy under the second attachment is the only claim that the sheriff has upon the property. All that need be shown is the levey under the attachment of the Memphis Grocery Company, the affidavit claiming the property, the execution of the claim bond, its appproval by the sheriff and the delivery of the property to claimants and their possession under it. It is then considered in the custody of the law and no levy of process at law can be lawfully made upon it. This, though as the courts say, in *Powell v. Rankin*, 80 Ala. 316, the rule is subject to great abuses.

2. It has been contended that even a court of chancery will not interfere. On the contrary, we maintain that this is just one of those cases in which a court of chancery will intervene because a court of law affords no protection. In this case, the rights of the complain ants are shown to be greatly imperilled, the claimants are alleged to be insolvent, and the bond deficient ; de ficient, too, in such manner that the defect can not be supplied in a court of law, for the claimants have done all that a court of law requires, so far as the bond is con cerned; that is, they have given a good bond in double the amount of the debt claimed by the Memphis Grocery Company, and having done this, the possession of the prop erty was properly delivered to them. This is certainly true as against the sheriff who approved the bond and

made the delivery.—*Rapier v. Gulf City Paper Co.*, 64 Ala. 330.

McCLELLAN, J.—This case is wholly unlike that of *Sackhoff v, Vandergrift*, 98 Ala. 192, which is referred to by the chancellor as authority for the decree below, and relied on here to support that decree. The point of radical difference lies in the facts that in that case the property for which a receiver was prayed and appointed was in the custody of the chancery court when the bill was filed and by which the receiver was appointed, while in the case at bar the property involved was, at the time of bill filed and receiver appointed, in the custody of another wholly independent and entirely competent tribunal —the circuit court of the county. And in that case this court expressly excluded the idea that the decision there made should be authority for a like conclusion in a case like the present one; STONE, C. J., saying: "We have mentioned the fact that in this case both suits are pending in the same court, and that consequently the chancellor's order would not have the effect of taking property levied on under process from one court, and placing it under the control of another court. Cases may arise in which property is levied on under process from one court, which in value exceeds the demand under which it is seized and bonded. Whether another creditor, asserting his claim in another jurisdiction, may not reach that surplus of value and make it available, is not presented by this record, and is not intended to be decided. We leave ourselves uncommitted, alike on the right and remedy in such conditions."

So that nothing which was involved, decided or said in that case can be justly looked to as authorizing a decree appointing a receiver in this. Apart from that case, we do not think even a pretense can be advanced in support of the jurisdiction and power of one court to take from another of concurrent jurisdiction the possession and control of property which the latter has first taken and assumed. A case in point is that of *Dollins & Co. v. Lindsey & Co.*, 89 Ala. 217, where, as in the case at bar, property had been levied upon by attachment issuing out of the circuit court, and delivered by the sheriff to a claimant upon the execution of the statutory bond, when a bill was filed in chacnery by a creditor of the

defendant in the attachment suit to set aside a conveyance to the claimant by said creditor as fraudulent, and prayed the appointment of a receiver to take possession of the property &c. &c. A receiver was appointed, and from that order an appeal was prosecuted to this court, where the order was reversed and the appointment vacated, for reasons thus stated by the court: "The property which had been attached, and to which statutory claim had been interposed, was in the custody of the law, and it was error to take it away from such custody, and place it in the hands of the receiver. It was alike prejudicial to the rights of the claimants and their sureties, and to the prior acquired jurisdiction of the law court over the *res*, which was the subject of contention.—*Rives v. Wilborne*, 6 Ala. 45 ; *Langdon v. Brumby*, 7 Ala. 53 ; *Kemp v. Porter, Ib.* 138 ; *Read v. Sprague*, 34 Ala. 101. The only exception to this rule is, when the second seizure is under process which has a paramount lien." And this is but the statement and recognition by this court of the thoroughly well established doctrine, that property put *in gremio legis* through the process of one court, and thus in custody of that court by its officers is beyond the reach of seizure under the order of process of another court of co-ordinate jurisdiction and powers.—Works on Jurisdiction, pp. 68 et seq., § 17 ; *Gay Hardie & Co. v. Briarfield Coal & Iron Co.*, 94 Ala. 303, 308.

And in principle it can be of no consequence that the value of the property thus in the custody of a competent court is greatly in excess of the demand of the plaintiff at whose suit the seizure was made. It is not a question of amounts or quantities, but of the inviolability of the court's custody and possession. To allow another court upon a mere averment, as here, of an excessive levy, or even upon its determination on evidence that more property had been seized than was necessary to satisfy the judgment which might be rendered in the court of seizure, to strip that court of the possession and control of *all* the property, or even of what the interfering court might deem the excess beyond that necessary to satisfy the pending claim, would not only lead to the greatest embarassment in judicial administration, but also to the establishment of a principle opposed to all received notions of the independence of co-ordinate courts, and whereby the circuit court would proceed in

the discharge of its important functions in respect of a large class of cases coming rightly and properly before it only by the grace of courts of chancery. We deem it not only better, but absolutely necessary, to the administration of justice, to maintain and re-affirm the well settled doctrine, that one court cannot take property out of the custody of another court of co-ordinate powers in the premises, except in the assertion of a lien paramount to the demand upon which such possession was taken and is held. The present bill is, therefore, without equity in so far as it seeks to have a receiver appointed for the property involved in the claim suit at law.

The Memphis Grocery Co., plaintiff in attachment at law, has, of course, a clear legal right to prosecute its action against the defendants in attachment, and also to maintain the affirmative of the issue made up or to be made up between it and the claimants. It is equally clear, of course, that the claimants are entitled to prosecute their claim in that court. If they are *bona fide* purchasers of the stock, and that is the issue in the claim suit, they will be entitled to the goods as against the plaintiff in attachment; and it would be to the last degree inequitable to enjoin them, as is prayed, to make defense against the claim of such plaintiff that they are fraudulent purchasers. The bill is, therefore, without equity also in so far as it seeks to enjoin Williams & Fowler from prosecuting their claim to the property.

The bill, while making no case for a receiver nor for an injunction against Williams & Fowler in respect of the claim suit, does make a case of fraud in the sale of Williams & Sons to Williams & Fowler, and on the principles so elaborately considered in the case of *Gay, Hardie & Co. v. The Briarfield Coal & Iron Co.*, 94 Ala. 303, the complainants had a standing in chancery to determine their abstract rights in respect of the property of their debtor alleged to have been fraudulently sold and conveyed, as against the alleged fraudulent purchasers thereof and to a decree, if the evidence sustains the averments of the bill, subjecting to complainants' demands all of said property, if any, which may be in the hands of Williams & Fowler when they shall cease to hold it as under the claim bond executed by them in the circuit court. In this aspect and to this end, and this only, the bill has equity; and upon this considera-

[McTeers v. Perkins.]

tion alone, the decretal order of the chancellor overruling the motion to dismiss for the want of equity is affirmed.

