## Remington Typewriter Co. *v.* Hall, *et al.*

*Bill for an Injunction.*

(Decided June 30, 1913.　63 South. 74.)

1. *Attachment; Levy; Property in the Hands of the Court.*—Where the sheriff held the property under the levy of an attachment regularly issued by a court of competent jurisdiction, an attempted levy of another attachment upon the same property in the hands of the sheriff without the consent of the court issuing the attachment under which it is held, is void, and creates no lien of any kind upon the property.

2. *Same; Proceeding to Enforce; Equitable Relief.*—Where an attaching creditor has acquired no lien or judgment against a foreign debtor by an attempted attachment, and there is no showing of fraud, he cannot maintain a bill against such attaching party of the property as not being the owner of the property, but must look alone to the attachment statute for his remedy, since the creation of the statutory proceedings by attachment did not create a new jurisdiction for courts of equity, simply by virtue thereof.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. Thomas W. WERT.

Bill by the Remington Typewriter Company against F. W. Hall and others, to enjoin them from selling or procuring for sale of a certain typewriter for the satisfaction of a judgment of said Hall against a foreign

corporation, and for a decree for sale of same for the satisfaction of the claim and demand of complainant against one Gulley. Decree for respondent and complainant's appeal. Affirmed.

WERT & LYNNE, for appellant. The demurrer was not well taken.—*Reid v. Sprague*, 34 Ala. 101; 4 Cyc. 596, 570. The bill contained equity.—Joyce on Injunctions, secs. 8 and 739. That injunction was the proper remedy, see Joyce on Injunctions, sec. 744.

E. W. GODBEY, for appellee. The deficiency in a creditor's legal remedy to reach his debtor's property, does not necessarily mean that there is a remedy in equity. Only in cases of fraud does equity annul any interference with property of the debtor in the absence of a judgment. A creditor of one whose property rights have been wrongfully invaded has no equitable remedy against the wrong doer. And this is true notwithstanding the non residence or insolvency of one of the parties.—*Holmes v. Millage*, (1893), 1 Q. B. 551, 10 Eng. Ruling Cases, 604, 608; *Anglo-Italian Bank v. Davies*, 9 Ch. Div. 275, Code of 1907, sec. 3739; *Building & Painters Supply Co. v. First National Bank*, 26 South. 311, 123 Ala. 203; *Savage v. Johnson*, 28 South. 547; *Turrentine v. Koopman*, 124 Ala. 211, 27 South. 523; *Redd v. Wallace*, 40 South. 407; *Hall v. Ala. Term. & Imp. Co.*, 143 Ala. 464, 2 L. R. A. (N. S.) 130; *Meyerovitz v. Glaser*, 31 South. 360; *Sanders & McLaughlin v. Watson*, 14 Ala. 198; *Phillips v. Ash, etc.*, 63 Ala. 414; *Williams v. Dismukes*, 17 South. 620; *Stanton v. Heard*, 14 South. 360, 100 Ala. 515; *Thurber v. Blanck*, 50 N. Y. 80; *Smith v. Moore*, 35 Ala. 76; *Reese & Heylin v. Bradford*, 13 Ala. 837; *Chambers v. Chambers*, 13 South. 674, 98 Ala. 454.

[Remington Typewriter Co. v. Hall, et al.]

DE GRAFFENRIED, J.—The facts are that on January 9, 1909, the complainant, the Remington Typewriter Company, sold to R. H. Gulley, one of the respondent's to the bill of complaint, a typewriter. Gulley paid a part of the purchase money of the typewriter in cash and gave notes for the balance. When Gulley bought the typewriter, he was living at New Decatur, and was working for the Cotton Growers' Industrial Company as its general manager. The Cotton Growers' Industrial Company seems to be a foreign corporation, and is domiciled in the state of Illinois. When Gulley bought the typewriter, the Cotton Growers' Industrial Company had an office in New Decatur, in which was a lot of office furniture belonging to the company. Gulley took the typewriter into this office, and until he left the state kept it there and conducted his correspondence as manager of said corporation upon it. On the 9th day of July, 1909, all of the property in said office, including said typewriter, was regularly attached by the sheriff of Morgan county in an attachment proceeding which had been regularly and validly instituted by one Hall against the said Cotton Growers' Industrial Company in the Morgan county law and equity court for the collection of an indebtedness of $500 which was owing the said Hall by the said Cotton Growers' Industrial Company. All of this property, including the typewriter, was attached as the property of the Cotton Growers' Industrial Company for the satisfaction of the said debt. When, therefore, the sheriff of Morgan county, acting as an officer of the law and equity court of Morgan county, levied upon said property and took it into his possession under said writ of attachment, all of said property, including said typewriter, *went into the possession of the law.*

About the time of the above levy Gulley also left the state, and thereupon the complainant, two or three days after the above levy, sued out an attachment before and returnable to a justice of the peace, against said Gulley, for the balance due it on the purchase money of the typewriter. The typewriter is the only property in the state which belongs to Gulley, and the above-described office furniture is all of the property in the state which belongs to the Cotton Growers' Industrial Company. After complainant commenced its attachment proceedings against Gulley, the writ of attachment was placed in the hands of a constable, and that constable, having seen the sheriff, and after having been shown the typewriter by the sheriff, made, with the consent of the sheriff, a return of complainant's writ of attachment to the court which had issued it, with the statement indorsed thereon that it had been levied on the typewriter as the property of the said Gulley. The typewriter, however, remained where it belonged, viz., in the possession of the sheriff, who had siezed it under the writ of attachment in his hands. The complainant thereupon, acting upon the assumption that its writ of attachment had been validly levied upon the typewriter, moved for and obtained a judgment against the said Gulley, and the justice of the peace, when he entered up the judgment, made an order that the typewriter be sold for its satisfaction. The sheriff, however, refused to turn the typewriter over to the constable; and the result is that the typewriter has never been sold under the above order, but yet remains in the hands of the sheriff.

After the above occurrence the said Hall obtained a judgment against the said Cotton Growers' Industrial Company, in his attachment proceeding against said company; and the said property so levied upon by the

sheriff in said attachment proceeding of Hall against the said Cotton Growers' Industrial Company, including said typewriter, was by the court condemned to be sold, and ordered to be sold, for the satisfaction of said judgment.

Thereupon the complainant, the Remington Typewriter Company, filed this bill of complaint against the said Hall, E. W. Godbey, his attorney in said attachment proceeding against the Cotton Growers' Industrial Company, Thomas R. Shipp, the sheriff who made the levy and who has the typewriter in his possession, and the said Cotton Growers' Industrial Company, and prayed, among other things, "that the said Frank W. Hall, E. W. Godbey, and Thos. R. Shipp, as sheriff as aforesaid, and each of them, be enjoined and restrained by order and decree from selling or procuring sold the said Remington typewriter described in complainant's bill hereinabove, on January 15, 1910, as advertised, and from selling or procuring the sale of said typewriter for the satisfaction of any portion of the judgment and demand of the said Frank W. Hall against the said Cotton Growers' Industrial Company; that upon final hearing of this cause the said injunction and restraining order be made perpetual, and the said Frank W. Hall, E. W. Godbey, and Thos. R. Shipp, as sheriff aforesaid, be forever restrained and enjoined from interfering or intermeddling in any way with the said typewriter, and from making sale thereof or causing sale to be made for the purpose of satisfying any part of said Hall's demand against said Cotton Growers' Industrial Company; that the court adjudge and decree that the said typewriter is no part of the estate or effects of the Cotton Growers' Industrial Company, and that it is the property of the defendant R. H. Gulley, and that said typewriter be ordered and decreed

sold for the satisfaction of the claim and demand of this complainant against the defendant R. H. Gulley; and this complainant prays for all other, further, additional and different relief to which it may be entitled."

1. The attempted levy, by the constable, of the writ of attachment of the Typewriter Company upon the typewriter after the writ of attachment of Hall against the Cotton Growers' Industrial Company had been levied upon it by the sheriff, and while that typewriter was in the possession of the sheriff under said writ, was abortive. The typewriter was then in gremio legis, the attempted levy was made without the *consent* of the *court* which was then in possession of the typewriter, and the alleged levy by the constable was therefore null and void. The sheriff was without power to consent to the levy, in the absence of the consent of the court having, through him, as its officer, the possession of the typewriter.—*Rives v. Wilborne,* 6 Ala. 45; *Langdon v. Brumby,* 7 Ala. 53; *Williams v. Dismukes,* 106 Ala. 402, 17 South. 621. It follows, therefore, that the complainant's attachment proceeding has given it no lien of any sort upon the typewriter.

2. "Attachment proceedings are purely statutory and operate only upon the legal rights of parties."—*Henderson v. Ala. Co.,* 72 Ala. 32; 2 Mayfield's Digest, p. 269, subd. 2. An attachment against a *nonresident* of this state is in the nature of a proceeding in rem, and a judgment rendered in such a proceeding affects only the property attached, unless, in some way, *personal* service is legally obtained upon such nonresident and proper notice of the pendency of the proceeding is given to such nonresident, or there is a personal appearance of such nonresident in said case before the judgment is actually rendered.—*Exchange National Bank of Spok-*

*ane v. Clement,* 109 Ala. 270, 19 South. 814. In an attachment proceeding against a nonresident, there can, therefore—unless there is a voluntary appearance of the nonresident in the cause, or unless, in some legal way, personal service of a summons and complaint in said cause is obtained upon such nonresident for a sufficient period before the day set for the trial to authorize a judgment to be taken against him which shall bind him personally—be no judgment taken in said cause unless there is a *valid levy* of the writ of attachment. Such a judgment is binding only upon the rem—the thing attached—and when there has been no valid levy of the attachment upon *anything,* no judgment of any sort can be rendered.

In the instant case there has been no levy, and there is therefore no lien. As there has been no levy, there is therefore no judgment, The complainant is therefore in the same position it would have been in if there had been no attempted levy by the constable upon the typewriter and no attempted proceedings in its attachment suit after such attempted levy by the constable.—*Exchange National Bank of Spokane v. Clement, supra.*

3. The complainant is, then, in this position: It has sued out an attachment against a nonresident. The suing out of that attachment has given it neither a *judgment* against the nonresident nor a *lien* upon any property belonging to that nonresident. It is, at best, a simple contract creditor of a nonresident. It claims that the law and equity *court* of Morgan county has in *its* possession a typewriter which, by virtue of a legal proceeding now pending in that court, went into the custody of that court. It appeals to a court of equity to require the law and equity court of Morgan county to *turn that property loose* in order that *another court* may take possession of it.

A proceeding by attachment is a statutory proceeding. It was unknown to the *common law*, and through this *statutory* proceeding there has not been, simply by virtue of its statutory creation a *new* jurisdiction thereby created for courts of equity. The principles of the common law and the principles of equity were developed together, side by side—the one complement to the other, the one an aid to the other, and, in many well-defined cases, the one to supply the deficiencies of the other—but our statutory system of attachments was created by our Legislature because *neither* courts of *law* nor courts of *equity* provided the needed *remedies* for the mischiefs intended to be remedied. In an attachment proceeding, *after* the plaintiff has acquired a *lien,* or when there has been *actual fraud,* a court of equity, by virtue of its *general jurisdiction* in matters of *liens, or of fraud,* might, in a *proper* case, come to the aid of a plaintiff *before* or after judgment—matters which are not before us and which we do not, of course, decide—but in this proceeding the complainant, with neither a *lien* nor a *judgment,* and with no fact showing *fraud,* must look alone to the statutes which created the *remedy* which he has invoked—*Sanders & McLaughlin v. Watson,* 14 Ala. 198; *Reese v. Bradford,* 13 Ala. 845; *Smith v. Moore,* 35 Ala. 76.

The bill of complaint is without equity. The decree of the court below, dismissing the complainant's bill, is for this reason affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.