# Crowe *v.* Reid *et al.*

### *Statutory Real Action in Nature of Ejectment.*

1. *Execution lien on lands; when not impaired by bankrupt law; enforced in State courts after adjudication in bankruptcy.*—The lien of attachment levied on real estate, more than four months prior to an adjudication in bankruptcy, and of executions issuing from the courts of this State, is not impaired or destroyed, but preserved, by the bankrupt law, and creditors having such liens, can enforce them, through the medium of State courts having jurisdiction, after the adjudication of bankruptcy.

2. *Assignee takes property subject to existing lien.*—All the property of a bankrupt vests in the assignee on assignment by the register, and this assignment has relation to the filing of the petition; but the assignee takes the estate as it was held by the bankrupt—subordinate to all liens with which it was charged at the time of the bankruptcy, and which are not impaired, but preserved by the bankrupt law.

3. *What will not prevent lien from attaching; same, how preserved.* When at the time of the filing of the petition and for four months prior thereto, there had been an execution in the hands of the sheriff of the county in which lands were situate, founded on a judgment recovered on a debt antecedent to the date of a voluntary conveyance by the debtor to a third person, a sale under execution being in fraud of creditors, will not prevent the lien from attaching, and the lien being valid at the adjudication of bank-

[Crowe v. Reid et al.]

ruptcy, the bankrupt law preserves it as it then existed against the assignee, notwithstanding executions are not sued out from term to term, between the levy and sale, as was then required to keep the lien execution alive.

4. *Assignee's claim; barred, when.*—Where property of the bankrupt is encumbered with a lien at the time of adjudication, which is preserved by the bankrupt law, and the assignee takes no steps to bring the property within the jurisdiction of the bankrupt court to have the lien adjusted, but leaves it with the creditor encumbered with the lien, and he obtains a sale under process from the State courts, in enforcement of his lien, and the assignee allows more than two years to elapse from his appointment before the sale by the sheriff—this operates as an acknowledgment of the superiority of the lien of the creditor, and is a bar to any claim by the assignee.

APPEAL from the Circuit Court of Perry.

Tried before the Hon. GEO. H. CRAIG.

The suit in this case was brought by John C. Reid, Alexander Graham and Chambers Graham, against William B. Modawell and Jesse B. Shivers, for the recovery of a certain tract of land in Marion. Issue was joined upon the plea of *"not guilty."* The plaintiffs, to show title, introduced as evidence a summons and complaint in favor of one James Gallups *et als.*, trustees, &c., against one Charles P. Phillips, Green B. Sanders and Wilson R. Brown, the note sued upon and judgment of the court rendered in said suit on December 16, 1867; also, certain executions issued upon said judgment July 1, 1869, to recover three thousand and sixty-eight dollars out of the lands, &c., of said Phillips, Sanders and Brown. In pursuance of such execution the sheriff levied upon the property, described in the complaint as the property of Green B. Sanders, and the same was duly sold, (March 2, 1871), under such execution, to John C. Reid and J. P. Graham, for eleven hundred and fifty dollars. The plaintiff then introduced a record of a suit and judgment obtained by John P. Graham against Green B. Sanders, on a note for one thousand and five hundred dollars, upon which execution issued, and was credited from sale of property on former execution in favor of James Gallups *et al.* against C. J. Phillips *et als.* Plaintiffs offered in evidence certain entries in the execution docket, to prove that an execution was issued upon said judgment on the 4th of January, 1870, and also introduced the entries, levy and return made and indorsed by the sheriff on said execution, to which defendant objected, on the ground that said entries were secondary and illegal evidence, but the court overruled the objection, and defendant excepted. Plaintiffs then produced an agreement of counsel, dated September 19, 1876, as follows: " *G. B. Sanders v. J. C. Reid,* and *Graham v. F. M. Crowe.* In these cases, it is agreed as follows: Said G. B. Sanders and F. M. Crowe

[Crowe v. Reid et al.]

admit that the office lot in controversy is not mentioned in the schedule filed by said Sanders with his petition, in the United States District Court at Montgomery, for the benefit of the bankrupt law. Said Reid and Graham admit that the debts due by said Sanders to the plaintiff, in the executions under which the lot was sold by the sheriff, at which sale the said Reid and J. P. Graham became purchasers, are properly entered and included in the schedules filed by said Sanders in his said bankrupt case, and that all the proceedings in said bankrupt case are regular and in accordance with the requirements of the bankrupt law." . . . . It is also admitted that the sheriff duly executed to said Reid and Graham, pursuant to their bid and purchase, a deed to the lot in controversy, and it is agreed that this admission is to be used in the ejectment suit of *Reid et al. v. Mrs. F. M. Crowe.*" Plaintiffs then produced and read in evidence the record of a deed to the lot in controversy, executed by M. A. and J. H. Wyatt to C. C. Crowe, dated January 29, 1860. Plaintiffs then read in evidence the record of a deed to said lot, executed by C. C. Crowe to Green B. Sanders, dated May 8, 1861. Plaintiffs then proved the rental value of the lot, and also proved that A. Graham and C. Graham are the heirs at law of J. P. Graham, who is dead, and here rested their case.

The defendant introduced in evidence a deed, executed by G. B. Sanders to the defendant, dated May 20, 1865, after which she read in evidence that part of the agreement of counsel hereinbefore quoted, commencing: "Said Reid and Graham admit that the debts, &c." Defendant then introduced the discharge in bankruptcy of said Green B. Sanders, a copy of which is as follows:

"No. 705. In the District Court of the United States, for the Middle District of Alabama. Whereas, Green B. Sanders, of Perry county, Alabama, has been duly adjudged a bankrupt, under the act of Congress establishing a uniform system of bankruptcy throughout the United States, and appears to have conformed to all the requirements of law in that behalf. It is therefore ordered by the court that the said Green B. Sanders be forever discharged from all debts and claims which by said act are made provable against his estate, and which existed on the 27th day of April, 1868, on which day the petition for adjudication was filed by him, excepting such debts, if any, as are by said act excepted from the operation of a discharge in bankruptcy. Given under my hand and seal of the court, at Montgomery, in

[Crowe v. Reid et al.]

the said district, this, twenty-sixth day of July, 1869.
[Seal.]   RICHARD BUSTEED, Judge of the District Court of
the United States.

"Filed and entered this, 26th day of July, 1869, at 4 p. m."

Defendant proved that the deed of the "1st of July, 1861,"
referred to in the said deed executed to her by said Sanders,
dated "the 20th day of May, 1865," had been in her pos-
session, and that the same was lost or destroyed, as recited in
said deed of the 20th of May, 1865.   Witness, G. B. Sanders,
testified that he executed the deed of 1st of July, 1861, and
delivered it to his daughter, Mrs. Crowe, who was the wife
of C. C. Crowe; that C. C. Crowe bought the lot of the
Wyatts, and took possession of it under said purchase; that
Mr. Crowe had the office built that was on the lot, and that
Mr. Crowe had possession of the property all the while,
until witness executed the said deed of 1st July, 1861, to his
daughter; that after this, Mr. Crowe occupied the office until
he died, which occurred in June, 1870, but during all this
time he claimed the property as belonging to his' wife; that
since his death Mrs. Crowe has been in possession until the
present time, and that witness never had possession of the
property at any time in his life.   On cross-examination,
among other questions, plaintiff asked said witness, what was
the consideration of the deed of the 8th of May, 1861,
executed by Crowe to him? to which defendant objected,
and being overruled, excepted.   Witness answered, that the
money he let Crowe have in January, 1861, with which
Crowe paid for building the office, was the only consideration
he gave for the deed.   Plaintiff then asked witness, what
consideration was paid him for the deed of 1st of July, 1861,
which he executed to Mrs. Crowe? to which defendant
objected, and being overruled, excepted.   Witness answered
that nothing was paid him; he gave it to her.   Plaintiff then
asked witness if he was not in embarrassed circumstances
when he made the deed of July, 1861? to which defendant
objected, on the ground that in this case the plaintiff had no
right to inquire into his circumstances at that time, and that
it was illegal in this case, which objection the court overruled,
and defendant excepted.   Witness answered that he was not
embarrassed with his own debts.   Plaintiff then asked wit-
ness if he was not indebted to Gates & Pleasants before the
war? to which defendant objected, on the ground last above
stated, which objection was overruled, and defendant ex-
cepted.   Witness answered that he was indebted to them as
security for W. L. Sanders.   Plaintiff then asked witness if

[Crowe v. Reid et al.]

he did not compromise with Gates & Pleasants after the war? to which defendant objected, on the ground that it was illegal in this case, and that plaintiffs had no right to inquire into that matter, which objection was overruled, and defendant excepted. Witness answered, "Yes, by selling all I had." This being all the evidence, the plaintiff asked the court, in writing, to charge the jury, "that if the jury believe the evidence in this case, they must find that the plaintiffs are entitled to recover from the defendant the lot mentioned in plaintiffs' complaint," which charge was given, and the defendant excepted. The court also charged as to the allowance of rent, &c. Judgment was rendered for the plaintiffs, and the defendant now appeals to this court, assigning the various rulings of the court below as error, among which are the following:

3. In overruling the objection of appellant to the following question asked G. B. Sanders, and allowing his answer thereto: "What was the consideration of the deed of the 8th of May, 1861, executed by Crowe to him?"

4. In overruling the objection of appellant to the following question asked Sanders, by appellees, and allowing him to answer the same: "What consideration was paid him for the deed of 1st July, 1861, which he executed to Mrs. Crowe?"

5. In overruling the objection to the following question asked said Sanders by appellees, and allowing him to answer the same: "If he was not in embarrassed circumstances when he made the deed of July, 1861?"

6. In overruling the objection to the following question asked said Sanders by appellees, and allowing him to answer the same: "If he was not indebted to Gates & Pleasants before the war?"

7. In overruling the objection to the following question asked said Sanders by appellees, and allowing him to answer the same: "If he did not compromise with Gates & Pleasants after the war?"

8. In giving the charges objected to by appellants.

JNO. F. VARY, for appellants.

W. M. BROOKS and W. L. BRAGG, contra.

No briefs came to Reporter.

BRICKELL, C. J.—1. The material questions which are pressed in the argument of appellant's counsel, were con-

[Crowe v. Reid et al.]

sidered and decided at the last term, in the case of *Vanzant v. Lockett.* We then held the lien of an attachment levied on real estate, more than four months prior to an adjudication in bankruptcy, and of executions issuing from the courts of the State, were not impaired or destroyed, but were preserved by the bankrupt law. That creditors could, after bankruptcy, enforce such liens through the medium of the process of the State courts having jurisdiction. Numerous authorities, State and Federal, were cited in support of the proposition. We are not aware that the first branch of the proposition has been, under the present bankrupt law, controverted. The point of controversy has been as to the proper jurisdiction in which to proceed after bankruptcy, for the enforcement of such liens. Though the jurisdiction of the courts of the State had attached, and was in full exercise, there are many cases, especially in the district courts of the United States, and in the earlier days of the operation of the bankrupt law, which hold that it was at once arrested by an adjudication in bankruptcy, and exclusive jurisdiction of the assets of the bankrupt, and of liens encumbering them, transferred to the court of bankruptcy. These cases are not supported by the decisions of the Supreme Court of the United States, under the present bankrupt law, or under that of 1841. In *Savage v. Best,* 3 How. 111, it was held: the lien of a creditor obtaining judgment in the State court, acquired by the delivery of a *fi. fa.* to the sheriff, was not affected by the subsequent bankruptcy of the debtor before a levy was made. Notwithstanding the bankruptcy, the sheriff could proceed to levy and sell, and the purchaser would acquire a valid title, prevailing over any claim of the assignee. In *Peck v. Jenness,* 7 How. 712, declaring the levy of an attachment created a lien, which was preserved by the bankrupt law, it was further held: the District Court of the United States, sitting in bankruptcy, could not interfere with, or oust the State court from which the attachment issued, of jurisdiction to proceed to a judgment of condemnation of the property levied on, to the satisfaction of the lien. In *Marshall v. Knox,* 16 Wall. 551, goods subject to a lien for rent, under the statutes of Louisiana, had been seized under process issuing out of a State court, at the suit of the lessor, before the bankruptcy of the lessee. It was held that they could not, on the bankruptcy of the lessee, be by the court of bankruptcy taken, by rule, from the possession of the sheriff and given to the assignee. In *Doe v. Childress,* 21 Wall. 642, an attachment issuing out of a State court, and levied more than four months

[Crowe v. Reid et al.]

before bankruptcy of the debtor, was declared a valid lien; and it was held if the assignee permitted the creditor to proceed to judgment, and to a sale of the lands levied on, the purchaser in a case free from fraud would hold against him.   In *Eyster v. Gaff*, 1 Otto 521, (91 U. S.), pending a bill for foreclosure of a mortgage, the mortgagor became bankrupt, and the cause proceeded to a final decree in a territorial court of Colorado, without the assignee intervening, or being made a party.   It was insisted the decree was void, and the purchaser under it acquired no title.   It was held by the Supreme Court the bankruptcy did not affect the jurisdiction of the court, and the assignee was bound by the decree, as any other person acquiring title from the bankrupt *pendente lite* would have been bound.   The court say: "It is a mistake to suppose that the bankrupt law avoids, of its own force, all judicial proceedings in the State or other courts the instant one of the parties is adjudged a bankrupt.   There is nothing in the act which sanctions such a proposition."   Again: "The opinion seems to have been quite prevalent in many quarters at one time, that the moment a man is declared a bankrupt, the district court which has so adjudged, draws to itself by that act, not only all control of the bankrupt's property and credits, but that no one can litigate with the assignee contested rights in any other court, except in so far as the circuit courts have concurrent jurisdiction, and that other courts can proceed no further in suits of which they had at that time full cognizance; and it was a prevalent practice to bring any person, who contested with the assignee any matter growing out of disputed rights of property, or of contracts, into the bankrupt court by the service of a rule to show cause, and to disprove of their rights in a summary way.   This court has steadily set its face against this view.   The debtor of a bankrupt, or the man who contests the right to real or personal property with him, loses none of those rights by the bankruptcy of his adversary. The same courts remain open to him in such contests, and the statute has not divested those courts of jurisdiction in such actions."

In the decisions of the Supreme Court of the United States, under the present, or under the bankrupt law of 1841, there is not discoverable any suggestion countenancing the proposition, so vigorously pressed by the counsel of the appellant, that an adjudication in bankruptcy strips other tribunals of jurisdiction already existing, and transfers to the court of bankruptcy exclusive jurisdiction of the estate of the bankrupt.   As that court has said, there is nothing in the bankrupt law pointing to such a result.

2.  The bankrupt law certainly contemplates that all the property and rights of property of the bankrupt, shall vest in the assignee, on the assignment by the register, and the assignment has relation to the filing of the petition for adjudication.  It is true, the assignment by the express terms of the law, includes all property the bankrupt has conveyed in fraud of creditors.  The assignee must nevertheless take and hold the estate, as it was held by the bankrupt, subordinate to all liens, with which it was charged at the time of the bankruptcy, and which are not impaired but preserved by the bankrupt law.  The premises in controversy doubtless passed to the assignee, if there were debts existing against the bankrupt at the time of the voluntary conveyance to the appellant, continuing to the time of the adjudication; or, if there were subsequent debts, and the conveyance was tainted with actual fraud.  If the premises passed to him, they passed in the plight and condition in which they would have been in the bankrupt, if that conveyance had not been made.  If in that condition they were encumbered with valid liens,, the encumbrance remained after bankruptcy.

3.  The premises passing to the assignee, by no subsequent proceeding against the bankrupt, though founded on, pre-existing judgments against him, could a lien be acquired which would override his title?  It may be true, that neither the judgment, nor the execution issuing on it, in favor of Graham, were a lien on the premises at the time of the bankruptcy, and that none was acquired by the subsequent issue of execution.  If this be conceded, the inquiry is, was there a lien in favor of Gallups, Appleman & Fish?  If there was, the execution was a proper mode of enforcing it, and the levy and sale under it, will support the title of the purchasers, though the execution in favor of Graham, was without a lien or even void.  At the time of the filing of the petition there was, and had been for over four months, an execution in the hands of the sheriff of the county, in which the premises are situate, issuing on the latter judgment,. which is founded on a debt antecedent to the conveyance under which the appellant deduces title..  There can be no doubt this execution was from the day it was received by the sheriff, a lien on all the property real and personal of the bankrupt within the county.—Revised Code, § 2872.  The conveyance to the appellant being voluntary, and as a matter of law, fraudulent and void as to existing creditors,. did not prevent the lien from attaching.  The lien thus acquired prior to, and existing at the time of the bankruptcy, it is

insisted was lost before the levy and sale, by the failure of
the creditor to sue out execution from term to term. It is
true that under the statutes of force at the time of Sanders'
bankruptcy, the lien of an execution was lost if the writ was
not kept alive from term to term. The right to sue out exe-
cution might remain, and if the rights of *bona fide* pur-
chasers, or of diligent junior creditors acquiring liens during
the suspension of execution, did not intervene, a new lien
could be acquired. But when bankruptcy intervenes, and at
the time of its occurrence there is a valid lien, the bankrupt
law preserves it as it then exists against the assignee in
bankruptcy. While the bankrupt law of 1841 was opera-
tive, our statutes gave judgments of courts of record, from
the day of their rendition, a lien on lands, and to executions
a lien on personalty within the county, from the day they
were received by the sheriff. The lien of an execution was
lost if it was not sued out from term to term. In *Doremus,
Snydam & Co. v. Walker*, 8 Ala. 202, it was said : "The lien
of a judgment is recognized as operative against the as-
signee, as it respects the real property of the bankrupt, and
the personalty will be bound by the execution. In either
case the lien is preserved according to the rights of the
creditor at the time the bankruptcy is established. If the
lien is then absolute, it completely overrides the decree, and
the creditor will be let into the enjoyment of its fruits."

4. The lien of the execution was absolute at the time of
Sanders' bankruptcy. A levy and sale were the steps which
must be taken to enable the creditor to realize its fruits, but
were not essential to its creation or validity. The estate of
the assignee, at its inception, was subject to the lien. If by
proper proceedings he had drawn the property within the
jurisdiction of the court of bankruptcy, the lien would have
followed it, and would have been there enforced. It was his
duty to determine whether he would draw the property
within the jurisdiction of that court, have the lien there
liquidated and enforced, or leave it to the creditor encum-
bered with the lien. He elected the latter course, and more
than two years having elapsed after his appointment before
the sale by the sheriff, operating *prima facie* a bar to any
claim to the premises he could allege, he must be regarded
as having yielded to the lien, and recognized its priority over
his title.

The appellant failed to establish an outstanding title in
the assignee in bankruptcy superior to that of the appellees.
It was on the strength of this title, not on the strength of

[Watford et al. v. Oates.]

her own, the defense was rested. The first charge given by the Circuit Court was warranted by the evidence. It has not been insisted the second charge is erroneous, if the first was correct.

In the view we have taken of the case, the evidence admitted against the objection of the appellant was merely redundant. Its tendency was to show actual fraud in the conveyance to the appellant. As matter of law, the conveyance was fraudulent and void as to antecedent creditors, and in this relation it was an admitted fact that the creditor stood, having the lien enforced by the sale under execution. The evidence was unnecessary, and its admission was not injurious to the appellant.

The judgment must be affirmed.