## Childs, adm'r &c. v. Jones & Co.

### Motion for Order of Sale under Execution, and Instructions to Sheriff.

1. *Lien of execution*—An execution is a lien on the property of the defendant, from the time it is received by the sheriff, although he may not have indorsed his receipt on it, nor entered it on his docket; and the death of the defendant does not destroy such lien, so long as successive executions are issued without the lapse of an entire term.

2. *Exemption of personalty, in favor of decedent's family.*—The exemption of personal property for the benefit of the family of a deceased debtor, under the provisions of the act of April 23, 1873 (Sess. Acts 1872-3, p. 64), can only be claimed where he left a widow or *minor* child or children.

APPEAL from the Circuit Court of Sumter.

Tried before the Hon. LUTHER R. SMITH.

This was a motion by Joel W. Jones & Co., plaintiffs in execution, for a *venditioni exponas* to the sheriff, commanding him to sell certain personal property, on which he had levied an execution in their favor against Green B. Mobley, deceased; and also a motion on the part of the sheriff, for instructions in the matter. The execution was levied on the 28th August, 1877, on certain articles of household and kitchen furniture, particularly described, to which a claim was interposed by W. H. Childs, the administrator of said Mobley's estate, on the ground that they were exempt from levy and sale, for the benefit of the defendant's family. On the trial and hearing of the motions, an issue being formed between the plaintiffs in execution and the administrator, the following facts were proved: The plaintiffs' judgment, on which the execution was issued, was rendered on the 21st October, 1876; and an execution on it was issued on the 4th November, 1876. Joel W. Jones, one of the plaintiffs, died on the 31st October, 1876, and the defendant died on the 12th January, 1877; and the question of fact mainly controverted was, as to what was done with this execution. The deputy-clerk, who principally attended to the business of the clerk's office, testified that he delivered it to the sheriff in person, on the 29th November, 1876, but did not make any entry of its issue on the execution docket; that it was re-

turned to the clerk's office by W. V. Stewart, one of the sheriff's deputies, who had indorsed on it these words : "Received in office, March 23, 1877," to which was signed the name of the sheriff by said deputy ; that no indorsement was then written on it ; "that after the return day of the execution, and after the court had convened at the Spring term, 1877, the sheriff obtained the execution from him," and made the following indorsements on it, to which he signed his name and title : "Received in office, November 29, 1877 ;" "Returned for an *alias*, April 12, 1877." When the execution was offered in evidence, the indorsement made by Stewart appeared to have been erased, but it was not shown by whom the erasure was made. Said Stewart, being examined as a witness by the court of its own motion, testified that he received the execution in Gainesville, on the 23d March, 1877, from one of the plaintiff's attorneys, and made said indorsement on it, and returned it to the clerk's office, and "that the said indorsement had never been erased with his consent." The sheriff was examined as a witness for the plaintiffs, and testified "that said execution came to his hands on the 29th November, 1876, and was by him sent to Gainesville, where said Mobley lived, by the hands of McCormick, one of his deputies," to see one of the plaintiff's attorneys, who lived in Gainesville, for instructions as to the levy ; that it was in his hands at the death of said Mobley, and that he did not enter the receipt of the execution on his books until after the death of said Mobley. Said McCormick testified that, to the best of his recollection, the sheriff handed the execution to him, to see plaintiffs' said attorney at Gainesville, "about the last of December, or the first of January ;" that it was in his hands at the time of said Mobley's death, and was afterwards handed by him to said attorney. The attorneys for the administrator each testified, that, soon after the death of said Green B. Mobley, being consulted by said W. H. Childs, who was his son-in-law, as to the necessity or propriety of taking out letters of administration on his estate, they went to the clerk's office, to ascertain whether there were any executions against him ; that the clerk's docket did not show that any execution had been issued against him ; that the deputy-clerk, in charge of the office, informed them that there was only one execution out against Mobley, which he had delivered to one of the plaintiffs' attorneys ; and that the sheriff, on whom they called, explaining to him the reasons for their inquiries, informed them that he had no execution against said Mobley, and had never received any. The plaintiffs' said attorney testified, that the execution was put into his hands after the

. (23)

death of Mobley, and was by him handed to said Stewart, the sheriff's deputy, by whom it was returned, as above stated. It was proved, also, "that no order of court had been obtained or applied for, authorizing the change in the return on the execution, or authorizing a revivor."

This being, in substance, all the evidence relating to the execution, the court allowed it to go to the jury as evidence, with the several indorsements thereon, "and instructed them to find whether it was in the hands of the sheriff before the death of said Mobley." The jury having returned a verdict in these words, "We, the jury, find that said execution was in the hands of the sheriff before the death of Mobley;" the counsel for the administrator insisted, "that they should be instructed to find whether it was in his hands at the time of said Mobley's death; whereupon, the court instructed the jury, that if the execution was put in the hands of the plaintiffs' attorney (Cooke), for levy, and was so when Mobley died, it would be, in legal effect, constructively in the hands of the sheriff at the death of said Mobley." To this charge the administrator reserved an exception, and also to the rulings of the court in allowing the execution to go to the jury. The jury then returned the following verdict: "We, the jury, find that the execution was sent to Gainesville for levy."

As to the claim of exemption, the administrator testified that said Mobley, at the time of his death, "was the head of a family; that he left no wife or minor children, but had several children living with him, all of whom, he believed, were of age;" and this was all the evidence on the subject. On all the evidence adduced, and on the verdict of the jury above stated, the court granted an order of sale, as prayed by the plaintiffs; to which the administrator reserved an exception.

The errors now assigned are, the rulings of the court on the evidence, the instructions to the jury, and the judgment of the court on the motion.

COCKRELL & SNEDECOR, with whom was T. B. WETMORE, for appellant.

COOKE & LITTLE, contra.

STONE, J.—We do not think the Circuit Court erred, in holding that the writ of execution was in the hands of the sheriff at and before the death of Mr. Mobley, the defendant in execution. This operated a lien upon his property, from the time it was received by the sheriff; and this lien was kept alive by the re-issue of executions, without the

lapse of an intervening term, until the levy was made; and the lien is still preserved, so far as we are advised.—*Hendon v. White,* 52 Ala. 597.

2. The remaining question arises on the claim of exemption asserted in favor of decedent's family. He left adult children, but neither wife nor minor child, surviving him. This claim depends on the statute, "To regulate property exempted from sale for the payment of debts," approved April 23, 1873.—Pamph. Acts, 64. That statute, section 3, declares, that "personal property, to the value of one thousand dollars, of any resident of the State, after his death, shall be exempt from the payment of debts; *Provided,* such decedent leaves surviving him a widow or child." This section is silent on the question of the minority of the child, and, unexplained, would appear to support the claim of exemption set up in this case. But this language does not stand alone, or unexplained. Section 12 declares, "That any person dying, leaving a widow, or child, or children, under the age of twenty-one years, members of his family, in addition to the exemptions heretofore made under this act, there shall be exempt" various other enumerated articles of personal property. Section 13 provides, "That whenever an executor or administrator makes out an inventory of the estate of any decedent, who left surviving him a widow, or minor child, it shall be his duty to permit said widow, or the guardian of such child or children, if there be no widow, or she does not act, to select the property exempt from administration for the payment of debts," &c. Section 14, "That any child, leaving the family of deceased, is entitled to an equal share of personal property reserved by exemption under this act, and which may be on hand at the time such child ceases to be a member of the family."

It will be observed that, under section 3 of the act, the same provisions are made in reference to the homestead, as are made in reference to the thousand dollars of personal property, after the death of the owner thereof. Each is, in the same language, declared to be "exempt from the payment of debts; *Provided,* such decedent leaves surviving him a widow or child." Yet, section 15, speaking of the homestead, says, "That the homestead exempted for the benefit of the widow and minor child or children under this act, may be retained," &c. This language clearly imports that, upon the death of the owner, the homestead does not descend, or continue exempt, unless there be a widow, or minor child or children. This is a legislative construction of the language employed in section 3, so far as it provides for a succession to the homestead, and we feel

[Toomer, Sykes & Billups v. Randolph. ]

bound to give the language the same construction, when it speaks of the personal property.—*Alford v. Alford*, at the last term. We hold, that a surviving widow or minor child is necessary, under the act of 1873, to a continuance of the exemption of a thousand dollars of personal property, after the death of the execution-debtor.

There is no error in the record, and the judgment of the Circuit Court is affirmed.