[Brown v. Newman.]

# Brown *v.* Newman.

*Statutory Real Action in nature of Ejectment.*

66   275
95   577
66   275
98   205
66   275
114  389
66   275
124  264

1. *Bankruptcy; lien of execution.*—Under the provisions of the late bankrupt law, all existing valid liens on the bankrupt's property were preserved and continued in force, and the assignee took the property subject to them; and where there was, at the time of the bankruptcy, an execution lien of force, it was not lost by the failure to issue an *alias* returnable to the next term, but might be enforced, notwithstanding the bankruptcy, by process from the court in which the judgment was rendered, unless, by proceedings on the part of either the assignee or the creditor, the determination of the questions involved was removed into the court of bankruptcy.

2. *Same; levy on lands, and sale under execution, after death of defendant.* The authority of the sheriff to levy on and sell lands under execution, after the death of the defendant in the writ, is purely statutory (Code, §§ 2633, 3213): if no execution is in his hands at the time of the defendant's death, and none is issued for several terms afterwards, a sale under an *alias* or *pluries*, subsequently issued, confers no title on the purchaser; and the intervening bankruptcy of the defendant, occurring a few days after the return of the original execution without a levy, and more than a year before his death, does not affect this principle.

3. *Charge to jury on portion of facts.*—A charge to the jury which asserts a correct legal proposition, based on certain facts hypothetically stated, but ignores other material facts, which qualify that principle, or render it inapplicable, is calculated to mislead the jury, and is a reversible error.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. LOUIS WYETH.

This action was brought by William P. Newman, against Richard Lanier, tenant in possession, to recover a certain tract of land particularly described in the complaint, with damages during its detention; and was commenced on the 28th October, 1876. Joseph A. Brown intervened as landlord of Lanier, and pleaded not guilty; and issue was joined on that plea, with others, and a trial by jury had, which resulted, under the rulings and charges of the court, in a verdict and judgment for the plaintiff. The land had belonged to one William D. Gardiner, having been conveyed to him by deed in 1846. The defendant claimed under a purchase from Mrs. Rodah Gardiner, the wife of said William D. Gardiner; and he testified, " that he paid her $2,000, and went into possession on the day of his purchase, in August, 1868, and had been in possession ever since." The plaintiff claimed title under a purchase at sheriff's sale, under execution against said William D. Gardiner, and also under a purchase at a sale made by his assignee in bankruptcy; but it is not neces-

sary to state the facts connected with the assignee's sale, as the court held it void for want of jurisdiction in the bankrupt court. The judgment on which the execution was issued, under which the sheriff sold the land, was rendered on the 2d November, 1867, in favor of George W. Neal. An execution was issued on said judgment, on the 9th December, 1867, and was returned by the sheriff, on the 1st April, 1868, "No property found." An *alias* execution was issued on the 19th June, 1869, and was levied on certain lands, not including the lands here in controversy; and it was returned by the sheriff, on the 2d September, 1869, indorsed, "Returned for an *alias fi. fa.*, by order of plaintiff." On the 2d December, 1873, two executions were issued on said judgment, one being in favor of Neal, the original plaintiff, and the other in favor of F. P. Ward, as his administrator; and both of these executions were levied, on the 4th December, on the lands now sued for. At the sheriff's sale under these levies, on the 5th January, 1874, the plaintiff became the purchaser, at the price of $25, and received the sheriff's deed, which recited only the levy of the execution in favor of Ward. On the 6th April, 1868, said W. D. Gardiner filed his petition in the District Court of the United States at Huntsville, asking to be discharged as a bankrupt; and was adjudged a bankrupt, on his said petition, on the 2d May following; and he died in August, 1870.

On these facts, with others which it is unnecessary to state, the court charged the jury, among other things, "that if, before the proceedings in bankruptcy, a creditor, through whom the plaintiff attempts to deraign his title, procured a judgment against William D. Gardiner, and, before said proceedings in bankruptcy, an execution was issued on said judgment; then the issuance of the execution was a lien upon the property of said Gardiner, the bankrupt, from the date of its delivery to the sheriff, which was preserved and kept alive by the provisions of the bankrupt law; and under these circumstances, it was unnecessary to issue *alias* and *pluries* executions to keep it alive, and the purchaser under such an execution sale gets a good title."

The defendant excepted to this charge, and requested the court, in writing, to instruct the jury that, "if judgment was rendered against W. D. Gardiner in November, 1867, and execution was issued the 9th December, 1867, and returned 'No property found' on the 1st April, 1868; and if Gardiner was adjudged a bankrupt on the 6th April, 1868, and no other execution issued until the 16th June, 1869, which was levied on the lands in controversy, and returned without a sale; and if no other execution was issued until after Gardiner's death in July (or August), 1870, and until the 2d December, 1873,

[Brown v. Newman.]

when execution was issued on the judgment, under which the land was sold by the sheriff, and purchased by the plaintiff; such sale conferred no title on plaintiff." The court refused to give this charge, and the defendant excepted to its refusal.

The charge given by the court, the refusal of the charge asked, and other rulings to which exceptions were reserved, are now assigned as error.

BRANDON & JONES, and JNO. D. WEEDEN, for appellant.

WALKER & SHELBY, and F. P. WARD, contra, cited Crowe v. Reid, 57 Ala. 281.

STONE, J.—On the 2d day of November, 1867, Neal recovered a judgment for over two thousand dollars, against Gardiner. On this judgment, execution was issued, on the 9th day of December, 1867, was received by the sheriff on the same day, and on the 1st day of April, 1868, it was returned by him "no property found." On the 6th day of April, 1868, Gardiner was adjudicated a bankrupt, on his own petition. By that act, all the right and title of Gardiner to the lands in controversy passed out of him, and, when an assignee was appointed, vested in the latter by virtue of the register's or judge's assignment and conveyance.—Rev. Stat. U. S. § 5044. But the assignee took the property subject to all valid claims and liens which any person had thereon. If there was a valid claim or lien in existence against the bankrupt, or upon the property, the bankrupt law did not impair either. It respects and preserves the lien where it finds it, and as it finds it.—Ib. § 5075. This, however, must be taken with the qualified right of the assignee to dissolve attachments previously levied.—Ib. §§ 5044, 5110. With this exception, however, the assignee takes the property subject to all the liens and incumbrances it was under when the petition in bankruptcy was filed. Of course, we do not mean to question the assignee's right to sue for and recover property of the bankrupt, previously disposed of fraudulently.—Rev. Stat. § 5046. And the adjudication in bankruptcy does not, per se, divest State courts of jurisdiction of pending suits between the bankrupt and third persons, to test rights of property, or to enforce liens. Over these subjects State courts have plenary jurisdiction, at least, until some step is taken to bring these controverted questions before the court in bankruptcy, or until the creditor, by some act of his own, transfers the determination of the issue to that court.—Savage's Assignee v. Best, 3 How. U. S. 111; Peck v. Jenness, 7 How. 612; Marshall v. Knox, 16 Wall. 551;

*Doe v. Childress*, 21 Wall. 642 ; *Eyster v. Gaff*, 91 U. S. 521 ; *Doremus v. Walker*, 8 Ala. 194.

The next execution issued on the judgment of *Neal v. Gardiner*, bore date June 19th, 1869, was received by the sheriff on the same day, and on that day levied on several described tracts of land, as the property of defendant Gardiner ; but the land in controversy in this suit is not among the tracts described as levied on. On this execution was indorsed, " Returned for an *alias fi. fa.* by order of plaintiff, this 2d day of September, 1869," signed by the sheriff. In 1870, Gardiner died. On the 2d day of December, 1873, the next execution was issued—more than three years after Gardiner's death—and two days afterwards, the sheriff, under that execution, levied on the lands in controversy. On the 5th day of January, 1874, the sheriff sold said land ; appellee became the purchaser, and received the sheriff's deed. It was shown that, before Neal recovered his judgment against Gardiner, the latter purchased the land in controversy, and received a deed therefor. The foregoing is plaintiff's (Newman's) chain of title.

In *Crowe v. Reid*, 57 Ala. 281, we considered the effect of bankruptcy on existing liens, and reached substantially the same conclusions as are announced above. We added : "The lien thus acquired prior to, and existing at the time of the bankruptcy, it is insisted, was lost before the levy and sale, by the failure of the creditor to sue out execution from term to term. It is true that, under the statutes of force at the time of Sanders' bankruptcy, the lien of an execution was lost, if the writ was not kept alive from term to term. * * But, when bankruptcy intervenes, and at the time of its occurrence there is a valid lien, the bankrupt law preserves it as it then exists, against the assignee in bankruptcy."

It is not necessary for us to inquire in this case, whether or not the effect of bankruptcy is to leave the parties having a lien where it finds them ; or whether it goes further, and ripens into a permanent, or continuing lien, that which otherwise would perish, if a term were permitted to elapse without a renewal of execution. It is equally immaterial to the merits of this case, whether, in abstaining from interference with valid liens, the bankrupt law changed or improved the execution lien created by our statute. Nor need we inquire whether the principle settled in *Doremus v. Walker*, governed as that case was by the law then in force, controls in the present case. We leave these questions unanswered, until some case arises which renders their solution necessary.

It will be observed that, in this case, when Gardiner died, there was no execution in the hands of the sheriff, nor was execution placed in his hands for more than three years after-

. [Brown v. Newman.]

wards. The right to levy on and sell property, after the death of the defendant in execution, is purely statutory. The language of the Code of 1876, § 2633, is : " When a judgment has been rendered against the decedent before his death, no execution can issue thereon against the personal representatives, except in the case provided for in section 3213 (2875); nor can the judgment be revived against them, except by suit on the judgment." Section 3213 (2875) is : " A writ of *fieri facias*, issued and received by the sheriff during the life of the defendant, may be levied after his decease, or an *alias* issued and levied, if there has not been the lapse of an entire term, so as to destroy the lien originally created." There is a misprint in the Code of 1876, in giving the number of the section referred to, in section 2633. An examination of the sections, and of the Revised Code, will show this. It is clear this case does not fall within section 3213. The first paragraph of that section, in its very terms, provides for a case where the sheriff has the execution in his hands before, and at the time of defendant's death. In such case, if the return day of the execution is not passed, the execution may be levied after the defendant's death. We need not say this case does not fall under this clause, for there was no execution in the hands of the sheriff when Gardiner died. Neither does it fall under the second clause ; for there had been a lapse of much more than an entire term, since the last preceding execution was returned.

In *Hendon v. White*, 52 Ala. 597, this court construed th-statutes we are considering. It was there said : " The judgs ment now not operating a lien, and the writ of *fieri faciae* issuing as well against lands as goods and chattels, and the lien being attached to it, the section of the Code last quoted can not be construed otherwise than to authorize the levy and sale of lands, as well as goods and chattels, under an *alias* or *pluries fi. fa.*, which is a regular continuance of execution, after the death of defendant." It had been previously said in that case : " It will be observed, that the Code obliterates the distinction, existing under the former statutes, as to the lien of judgments and executions. The lien is no longer attached to the judgment, but to the execution. It attaches to lands, and goods and chattels, at the same time. As to each, it is confined to the county to which the execution issues. The lien as to each is lost by the same *laches*,—the failure to keep alive the execution from term to term."—See, also, *Jones v. Ray*, 50 Ala. 599 ; *Childs v. Jones*, 60 Ala. 352.

As we stated above, the authority conferred on the sheriff, to levy on and sell lands after the death of the defendant in execution, is purely statutory. Unless the record shows a

case the statute provides for, the authority does not exist, and the sale and deed confer no title. Such is this case; and we feel bound to hold, that Newman showed no title that authorized a recovery, even under the rule declared in *Crowe v. Reid.*

In the general charge to the jury, the court said: "If, before the proceedings in bankruptcy, a creditor, through whom the plaintiff attempts to deraign title, procured a judgment against Wm. D. Gardiner, and, before said proceedings in bankruptcy, an execution was issued on said judgment, then the issue of the execution was a lien upon the property of Wm. D. Gardiner, the bankrupt, from the date of its delivery to the sheriff, which was preserved and kept alive by the provisions of the bankrupt law; and under these circumstances, it was unnecessary to issue *alias* and *pluries* executions to keep it alive, and the purchaser under such an execution sale gets a good title." This charge is in precise accordance with the principles settled in *Crowe v. Reid, supra.* But charges must be construed in reference to the testimony. 1 Brick. Dig. 345, § 141. A charge which withdraws from the consideration of the jury any evidence, which tends to establish a material point in issue, is directly calculated to mislead them, and is improper.—*Edgar v. McArn,* 22 Ala. 796; *Pritchett v. Munroe, Ib.* 501; *Holmes v. The State,* 23 Ala. 17; *Reese v. Beck,* 24 Ala. 651; *Upson v. Raiford,* 29 Ala. 188. The hypothesis of the charge copied above is, that if the jury found certain enumerated facts to exist, then Newman acquired a good title by his execution purchase. The enumerated facts were all clearly proved, and the charge scarcely left to the jury any field of inquiry; and if there had been no other material question, on which testimony was given, the case would rest alone on the principle declared in *Crowe v. Reid.* But there was other material testimony. Several witnesses testified, that Gardiner died in 1870, and there was no conflict in the testimony on this point. This left more than three years after the issue and return of the last preceding execution, and after the death of Gardiner, before another execution was issued. The failure to issue an *alias* execution, according to *Crowe v. Reid,* was bridged over by Gardiner's bankruptcy, which took place in less than a term after the return of the first execution. But, when Gardiner died, there occurred another *hiatus,* or suspension of the power to enforce the judgment by execution, which could be gotten over only by a compliance with the statute. In this case, such compliance was rendered impossible, as we have shown above. The charge given was erroneous, in this, that it entirely ignored important and undisputed testimony,

which, if believed, showed that the purchaser under such an
execution sale does not get a good title. The charge given,
construed in reference to the evidence, does not assert a cor-
rect legal principle.

Reversed and remanded.

BRICKELL, C. J. not sitting.