# Anderson v. Timberlake.

## *Action of Assumpsit.*

1. *Principal and agent; liability to third person.*—When one known
to be an agent deals or contracts within the scope of his authority,
there is a legal presumption that the dealing is the act, or the con-
tract is the engagement, of the principal alone, as if he were person-
ally present acting or contracting, which presumption, in the absence
of evidence to the contrary, prevails and casts upon the party seek-
ing to charge the agent personally the burden of proving that credit,
as the result of such deal or contract, was given to the agent ex-
clusively.

2. *Same; construction of contract; parol and written.*—Where a
contract made with one known to be an agent, within the scope of
his authority, is reduced to writing, its construction and effect are,
ordinarily, questions of law for the decision of the court; but when
the contract is verbal, the question, whether the credit, resulting
from such contract, was given to the agent in exclusion of the prin-
cipal, is a question of fact for the determination of the jury, to be
ascertained from a consideration of all the facts and circumstances
attending the transaction.

3. *Same; liability to third person; personal liability of agent.*—
Where an agent makes a contract within the scope of his authority,
and the other party to the contract knows that the relation of prin-
cipal and agent exists in reference to such contract, and the principal
is disclosed at the time as such, the contract is the contract of the
principal, and the agent is not bound, unless credit was given to him
expressly and exclusively, and it was clearly his intention to assume

[Anderson v. Timberlake.]

the obligation as a personal liability; and to hold an agent personally liable in such case, it must be shown that credit was given exclusively to the agent, that the ageut was informed of that fact, and that it was his intention to become the sole debtor.

4. *Same; same; direction of agent to charge account to him not conclusive of his personal liability.*—When one who is known to be an agent, contracts an account within the scope of his authority, the fact that, at the commencement of the transactions from which the account originated, he directed the account to be charged to him, is not decisive that he intended to become the sole debtor, to the exclusion of all liability on the part of his principal, nor is it decisive that the creditor did not extend any credit to the principal; and in an action on said account by the creditor against the agent, such direction is for the consideration of the jury, to be taken in connection with all other facts and circumstances attending the dealings between the parties, in ascertaining whether credit was given exclusively to the agent, and whether, with knowledge of that fact, he intended to assume individual responsibility.

5. *Pleading and practice; misleading charges; giving them not cause for reversal.*—While charges which have a tendency to confuse and mislead the jury should be refused, the giving of such charges is not cause for reversal of the judgment of the trial court; since it was incumbent upon the party against whose interest they were given, to have avoided whatever of injury may have been apprehended, by a request for additional or explanatory charges.

6. *Principal and agent; personal liability of agent; promise to pay at the time of making contract.*—Where one who is known to be an agent contracts an account for his principal, such agent's promise to pay at the time of the creation of said account is, *prima facie*, the promise of the principal, not involving the agent in personal liability; but in an action against such agent, founded upon such account, evidence of the promise is admissible upon an issue as to whether credit was extended to the agent solely, and whether it was his intention to bind himself and not the principal by the contract—such evidence to be considered by the jury in connection with the other facts and circumstances of the transaction.

7. *Same; same; subsequent promise of payment.*—Where one who is known to be an agent, contracts an account for his principal, a promise of payment by such agent, made subsequent to the creation of the account, is void for the want of consideration.

8. *Same; action against an agent; charge invasive of the province of the jury.*—In an action against an agent seeking to hold him personally liable for the payment of an account contracted by him, where there was evidence tending to dispute the fact of defendant's agency, a charge to the jury which instructs them that the plaintiff was charged with the knowledge of the agency of the defendant, without referring to the jury the credibility of the testimony to the contrary, is invasive of the jury's province, and is properly refused.

[Anderson v. Timberlake.]

9. *Pleading and practice; when general affirmative charges properly refused.*—Where there is any conflict in the evidence as to any material fact or point involved in the determination of a case, general charges upon the effect of the evidence are properly refused.

10. *Principal and agent; notice resulting from a written contract; charge to the jury.*—In an action against one who acted as agent, seeking to hold the defendant personally liable on an account contracted by him for a lumber company, where there is an issue as to whether the defendant was liable as principal in running a saw mill for the use of which the account was contracted, and whether plaintiff knew he was acting as agent, and a contract was introduced in evidence, to which the plaintiff was a party, and which contemplated the operation of the said mill by the said lumber company, the alleged principal of the defendant, the plaintiff was, by said contract, charged with notice that the said lumber company, and not the defendant, was running the mill for which the account was contracted, and a charge so instructing the jury should be given.

11. *Charge to the jury; erroneous when withdrawing material facts from the consideration of the jury.*—An instruction which withdraws from the consideration of the jury any evidence, however weak, which has a tendency to establish material facts, is calculated to mislead the jury, and is, therefore, properly refused.

12. *Payment by delivery of property; laches; what necessary to discharge the transferror.*—A creditor accepting a transfer of drafts by mere delivery, without indorsement, as a conditional payment or as collateral security, is bound to the use of due diligence in rendering them available; but the laches of the creditor in this respect does not, of itself, operate to discharge the transferror, and in order to have such effect, it must be shown that the laches caused loss or damage to the transferror.

13. *Discount; definition thereof.*—The term discount, as used in commercial transactions, signifies the interest allowed in advancing upon bills of exchange and negotiable securities; and to discount a bill is to buy it before maturity for a less sum than that which upon its face is payable.

14. *Same; misleading charges in reference thereto.*—In an action where one of the issues was as to the payment of an account by the plaintiff's acceptance of drafts, a charge which instructs the jury that " where a creditor takes on an account of his debtor, drafts of a third person at a discount, without indorsement, the drafts operate as payment on the account to the amount of the drafts less the discount," is calculated to mislead the jury, when there was testimony tending to show that there was an agreement between the parties that the drafts were taken only as conditional payment; such charge diverting the attention of the jury from the consideration of such testimony.

APPEAL from the Circuit Court of Jackson.

Tried before the Hon. H. C. SPEAKE.

This is an action on the common counts brought by the appellee, P. B. Timberlake, against the appellant, John H. Anderson. The suit was commenced by attachment.

There is no dispute that the defendant was, in fact, a mere agent on a salary for the North Alabama Lumber & Manufacturing Company during the time the indebtedness was contracted; that as such agent he was running a saw-mill known as "Crow Creek Mill," and said indebtedness was contracted in the running of said mill. The plaintiff insists that the account was contracted by the defendant on his own responsibility, that he credited him personally, and knew no other person in the transaction.

The plaintiff testified in relation to said account as follows: "The defendant contracted an account with me in 1889, amounting to $1,012.25, and running from the month of March to the latter part of August. I have no itemized statement of my account, because my books and statements were burned in the fire in my store at Stevenson last fall. The defendant was, at the time of making the account, running a saw-mill, known as the Crow Creek Mill, located at the bridge across Crow Creek, about one mile from Stevenson. The account is for goods and merchandise sold to him and his employés, and for money to pay on pay-rolls to the hands employed at the mill. I was engaged in merchandising in the town of Stevenson at the time, and defendant made arrangements with me to let his hands have goods, and to pay the pay-rolls he should furnish me from time to time, and charge the same to his account. The contract was made in this way. I never knew anybody else in the contract but the defendant; he directed me to keep the account on my books against Anderson and Kilpatrick, because, he said, he wished to keep the mill account separate from his own individual account for his own convenience. He furnished me the pay-rolls from time to time, showing amounts due to employés at the mill, and I paid same in money or by entering credit on the accounts of the hands for their portion of the same. The pay-rolls were signed by John H. Anderson, the defend-

ant.  I have none of the pay-rolls at this time, because they were all burned in the fire at Stevenson.''

On cross-examination the plaintiff testified : `` It was understood between Mr. Anderson and myself, that the account was to be settled in this way :  I sent statements to Mr. Anderson, and Mr. Anderson sent me drafts when the account got larger than it ought to be ; I sent the account with the request for draft to cover the amount. I had agreed with Mr. Anderson to handle their drafts. When I received these drafts, I did not discount them, but charged interest on them.  I credited the full amount of the draft, but charged interest on it ; for instance, if Mr. Anderson had a draft for $200, at sixty days sight, I would give Mr. Anderson credit by draft $200, and charge him interest on this amount for sixty days.''

Witness further testified, that if all the drafts had been paid, the accounts would have been over-paid some thirty odd dollars.  In response to questions by defendant's counsel, the plaintiff produced the drafts referred to in his examination, and they were introduced in evidennce by the defendant.  The said drafts were drawn by the North Alabama Lumber & Manufacturing Co. on Kilpatrick & Co., N. Y., in favor of the plaintiff, P. B. Timberlake, and were not indorsed by the defendant, Anderson.

Each of said drafts was duly accepted by the drawees ; and only two of them—one for $200, and one for $122— were protested for non-payment.  The plaintiff further testified that after the failure of the North Alabama Lumber & Manufacturing Company, he ordered the other drafts returned without protest, in order to save protest fees. It was further developed on the cross-examination of the plaintiff, that he and the defendant ran the Crow Creek Mill during the year 1888, under the name of Anderson & Timberlake, and that the plaintiff sold his interest therein to the North Alabama Lumber & Manufacturing Company, March 15, 1889 ; that he made a contract in writing with said company of that date, which is set out in the bill of exceptions.  It was also shown that after the failure of the North Alabama Lumber & Manufacturing Co., the plaintiff presented said drafts to the assignees of that company, and made effort to collect them. That the defendant was in fact a mere agent of the North Alabama Lumber & Manufacturing Company was not controverted.

[Anderson v. Timberlake.]

The defendant testified that he never authorized the plaintiff to charge the account to him, and never agreed to become personally bound for its payment; that the plaintiff had run an account with the mill for a number of years prior to the formation of the North Alabama Lumber & Manufacturing Company, while the defendant was in the employ of Kilpatrick & Co., as their agent, and that said mill account had from time to time been paid in drafts, and that at the time the several drafts in evidence were sent to the plaintiff, the credit of the North Alabama Lumber & Manufacturing Company was good, and that its paper passed current in the business world; that the plaintiff took the drafts in payment of the account, and never requested the defendant to indorse one of them. He further testified that the plaintiff knew full well at the time the account was contracted, and prior thereto, that the defendant was only an agent of the North Alabama Lumber & Manufacturing Co., and that the account in dispute was contracted for the benefit of the company.

Frank J. Kilpatrick testified that he was the general manager of the North Alabama Lumber & Manufacturing Co., that said Crow Creek Mill was the property of that company; that the defendant, Anderson, was a mere agent working on a salary, and that the witness, as such general manager, authorized Anderson to make the arrangements with Timberlake by which he should pay off the hands working at the mill, as shown by the pay rolls furnished him, in consideration of the company putting all the custom of the mill in Timberlake's hands, and that the latter furnished statements from time to time, and drafts of the company were sent him to cover whatever was then due. The witness further stated that prior to the time when the indebtedness here sued for was contracted, he had a conversation with the plaintiff in regard to the matter, in which it was freely discussed, that Anderson was the mere agent of the company, and that the account was for the benefit of the company.

At the request of the plaintiff the court gave to the jury the following written charges: (1.) "If the account was charged to Anderson, or to Anderson & Kilpatrick, by Anderson's direction, and Timberlake extended the credit to him or them on this account, then it is his debt

and he is liable, notwithstanding the North Alabama Lumber & Manufacturing Company were parties bene-ficially interested in the account." (2.) "Notwithstand-ing this might have been the account of the North Alabama Lumber & Manufacturing Company, still if the defendant, John H. Anderson, at first had the ac-count charged to him, and afterwards had it charged to Anderson & Kilpatrick, and promised to pay it, this would render him, Anderson, personally liable." (3.) "If an agent contracts in his own name, without dis-closing his principal, he incurs a personal liability which is primary in its character." (4.) "Notwith-standing this might have been the account of the North Alabama Lumber & Manufacturing Company, still if the defendant, John H. Anderson, had the account charged to him, and promised to pay it, this would render him, Anderson, personally liable." (5.) "If the defendant owed the account, then the drafts were not a payment unless such an agreement can reasonably be implied from the circumstances and facts in evi-dence." The defendant separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give each of the follow-ing charges which were requested by him : (1.) "Under the evidence in this case, the plaintiff is charged with knowledge of the fact, if it be a fact, that Anderson was the agent of the North Alabama Lumber & Manufactur-ing Company." (2.) "If the jury believe the evidence, the plaintiff can not recover on the account or any part thereof, to which the drafts were credited." (3.) "If the jury believe the evidence, they should find for the plaintiff for the undisputed items only." (4.) "There can be no recovery on so much of the account as is cov-ered by the drafts not shown to have been protested." (5.) "The plaintiff can not, in any view of the evidence, recover for any part of the account covered by the drafts which were not protested." (6.) "If the jury believe from the evidence, that during the time covered by the account in controversy, the Crow Creek Mill was run and operated by the North Alabama Lumber & Manufacturing Company on its own account, and that said account was contracted for the benefit of said North Alabama Lum-ber & Manufacturing Company, then the plaintiff can not recover the amount of said controverted account."

[Anderson v. Timberlake.]

(7.) "The written contract of March 15, 1889, contemplates the running of the mill by the North Alabama Lumber & Manufacturing Company, and the plaintiff is charged with notice of this fact." (8.) "The term discount, as a substantive, signifies the interest allowed in advancing upon bills of exchange or negotiable securities; and 'to discount a bill' is to buy it for a less sum than that which upon its face is payable." (9.) "Where a creditor takes, on the account of his debtor, drafts of a third person, at a discount, without indorsement, the drafts operate as payment on the account to the amount of the drafts less discount."

There were verdict and judgment for the plaintiff. The defendant appeals, and assigns as error the giving of the several charges requested by the plaintiff, and the court's refusal to give the several charges requested by him.

MARTIN & BOULDIN, for appellant.—1. The plain effect of the first charge given at plaintiff's request was, that the jury should find for the plaintiff, without any regard whatever to the tendencies of the evidence to establish payment by the drafts, or the discharge of the defendant as surety for the principal debtor, either by taking the drafts and giving time without the consent of the defendant, or by neglecting to protest the drafts for non-payment, so as to charge the drawer for the protection and benefit of the defendant. A charge which ignores any material conflicting or qualifying evidence, or a material fact which is the legitimate inference of other proven facts, is necessarily misleading and erroneously faulty.—*Boyd v. Jones*, 96 Ala. 305; *Payne v. Crawford*, 102 Ala. 387; *Harris v. Russell*, 93 Ala. 59; *Marx v. Leinkauff*, 93 Ala. 453; *Fariss v. State*, 85 Ala. 1; *Thompson v. Duncan*, 76 Ala. 334; *Ramsey v. State*, 91 Ala. 29; *Williamson v. Tyson*, 105 Ala. 644.

2. There was abundant evidence from which the jury might have found that the drafts were taken in payment of the indebtedness sued on. The defendant testified that the indebtedness was contracted with the distinct understanding that it was to be paid in these drafts. The plaintiff himself shows that he did in fact discount the drafts, though he says he did not, for he credited the

[Anderson v. Timberlake.]

whole amount of the drafts, and charged interest thereon to maturity; the two entries taken together are equal to a credit for the amount of the drafts, less the interest thereon to maturity. This is the precise definition of the term "Discount."—*Youngblood v. Birmingham, &c. Co.*, 95 Ala. 521; *Saltmarsh v. Bank*, 14 Ala. 677; *Fleckner v. U. S. Bank*, 8 Wheat. (U. S.) 338; *Nat. Bank v. Johnson*, 104 U. S. 271. The drafts were discounted, that is, bought, and the proceeds applied to the accounts, thereby extinguishing the latter as effectually as if the money had been actually handed over.—*Whitbeck v. VanNess*, 11 Johns. 409, 6 Amer. Dec. 383; *Whitley v. Dunham Lumber Co.*, 89 Ala. 493; *Day v. Thompson*, 65 Ala. 269.

3. If the purchase was absolute, of course the account was paid by the credits arising from the purchase. If the purchase was conditional on the payment, still that would only give the purchaser an election to rescind on non-payment, or to stand by the purchase; and an election once made, could not be changed. Any deliberate act, done at the time, or after the right of election arose, evidencing such election, would be conclusive.—*Lehman v. Van Winkle*, 92 Ala. 443; *Robb v. Voss*, 155 U. S. 13; *Thompson v. Howard*, 31 Mich. 309; *Campbell P. P. Co. v. R. F. Co.*, 44 Amer. St. Rep. 411.

J. E. BROWN, *contra.*—The case made by the record falls within the rule laid down in Story on Agency, section 266, which is as follows: "A person contracting as agent will be personally responsible, when at the time of making the contract, he does not disclose the fact of his agency, but he treats with the other party as being himself the principal; in such case it follows irresistably that credit is given to him on account of the contract. Thus, a factor or broker or other agent buying goods in his own name as principal, will be responsible to the seller therefor in every case, when his agency is not disclosed. But we are not therefore to infer, that the principal may not also, when afterwards discovered, be liable for the payment of the price of the same goods, for in many cases of this sort, as we shall hereafter abundantly see, the principal and agent may both be severally liable upon the same con-

25

tract." The same rule obtains in Alabama.—*Wood v. Brewer*, 73 Ala. 259 ; *Dexter v. Ohlander*, 93 Ala. 441.

BRICKELL, C. J.—The legal presumption is, when a known agent deals or contracts within the scope of his authority, that credit is extended to the principal and not to the agent ; and that the dealing is the act, or the contract is the engagement, of the principal alone, as if he were personally present and acting or contracting. This presumption prevails in the absence of evidence that credit was given to the agent exclusively, and the burden of proof rests upon the party seeking to charge him personally. If the contract or promise is in writing, its construction and effect are, ordinarily, questions of law for the decision of the court. But when the contract or promise is *verbal*, the question, whether the credit was given to the agent in exclusion of the credit of the principal, is a question of fact for the determination of the jury, to be ascertained from a consideration of all the circumstances attending the transaction.— Mechem on Agency, § 558 ; 1 Am. & Eng. Encyc. of Law, (2d ed.), 1119-20 ; *Whitney v. Wyman*, 101 U. S. 392. In 1 Am. Lead. Cas., (5th ed.), 764, speaking in reference to verbal contracts made by or through an agent, it is said : "That when the relation of principal and agent exists in reference to a contract, and is known to the other party to exist, and the principal is disclosed at the time as such, the contract is the contract of the principal, and the agent is not bound, unless credit has been given to him expressly and exclusively, and it was clearly his intention to assume a personal responsibility ; but, if credit was given to him exclusively, and he intended to give his own personal engagement, he will be bound ; and this, upon sufficient evidence, is a question for the jury on all the circumstances of the case." In the recent case, *Humes v. Decatur Land Imp. &c. Co.*, 98 Ala. 461, it was said by COLEMAN, J. : "To hold an agent personally liable in cases in which he discloses his principal, and that the services to be rendered are for the sole benefit of the principal, and the contract is within the scope of his authority, it must be shown that the credit was given exclusively to the agent, and that the agent was informed of that fact."

Applying this well settled principle, the instructions

to the jury, given at the instance of the plaintiff, numbered one, two and four, are essentially erroneous. They proceed, manifestly, on the theory, that the principal, the North Alabama Lumber & Manufacturing Company, and the defendant as agent, were, or could be bound, jointly or severally, by the same contract or engagement; or, that the promise of the one could be collateral to the promise of the other. While the true inquiry, an inquiry to be solved by the jury upon a consideration of the course of dealing between the parties, and all the attending facts and circumstances, was, whether any credit was given to the principal, or, whether it was given exclusively to the defendant, and it was his intention to become the sole debtor to the plaintiff. The fact that the defendant, at the commencement of the transaction from which the account originated, may have directed the accounts, as created, to be charged to him, or to himself and Kilpatrick, to which so much of prominence is given by the instructions, is far from being decisive that he intended to become the sole debtor, or a debtor jointly with Kilpatrick, to the exclusion of all liability on the part of the North Alabama Lumber & Manufacturing Company; nor is it decisive that the plaintiff did not extend any credit whatever to that company. The purpose of the direction may have been only to separate and distinguish the accounts the defendant was creating as agent, from the individual dealings he was having, or might have, with the plaintiff. As a fact, the direction is for the consideration of the jury, to be taken in connection with all other facts and circumstances attending the dealings between the parties, in ascertaining whether exclusive credit was extended to the defendant, and whether with knowledge of that fact, he intended to assume individual responsibility.

There was evidence having a tendency to show that prior and subsequent to the creation of the accounts, the defendant promised to pay them. Whether the instructions were intended to direct the attention of the jury to the prior or to the subsequent promises, or, without distinguishing between them, were intended to embrace the whole, is not clear and certain. In this respect the instructions may have a tendency to mislead and confuse the jury, and for this reason, could have been properly

refused. But we are not prepared to say, the error is cause for reversal; the defendant should have avoided whatever of injury may have been apprehended, by a request for additional, or explanatory instructions. A promise of payment by the defendant, subsequent to the creation of the accounts, would be void for a want of all consideration. The debt had been contracted, and if it was the debt of the principal, the promise of the defendant to pay it, was a mere undertaking or engagement upon a consideration past and executed.—*Jackson v. Jackson,* 9 Ala. 791. A promise to pay at the time of the creation of the accounts, *prima facie,* would be the promise of the principal, not involving the defendant in personal liability. Evidence of these promises is admissible upon the pivotal inquiry, whether credit was extended to the defendant solely, and whether it was his intention to bind himself and not the principal; they are circumstances attending the transaction between the parties, not to be disconnected from other facts and circumstances, and of themselves are not fitting elements of an instruction to the jury.

It does not clearly appear, that the agency of the defendant for the North Alabama Lumber & Manufacturing Company was a disputed fact. If it was, whether the plaintiff had knowledge, or was charged with knowledge of the fact, depended in a degree upon oral testimony, and the inferences drawn from it by the jury. In such case, an instruction not referring to the jury the credibility of the testimony, is an invasion of their province. For this reason, the first instruction requested by the defendant was properly refused.—1 Brick. Dig. 366, § 8. The second and third, are general instructions on the effect of the evidence, which are not proper, when there is any conflict in the evidence, as to any material fact or point involved in the determination of the case. The seventh instruction should have been given. The writing to which it refers, in the execution of which the plaintiff joined, plainly contemplates the operation of the mill by the North Alabama Lumber & Manufacturing Company; and of that fact, the plaintiff being a party to the writing, was charged with notice. This is the legal effect of the writing as matter of evidence, which it was the province and duty of the court o declare without hypothesis, the genuineness of the

writing not being controverted.—*Knox v. Fair*, 17 Ala. 503 ; *Rigby v. Norwood*, 34 Ala. 129. The sixth instruction was properly refused. It withdrew from the consideration of the jury, the evidence having a tendency to show that the accounts were created by the defendant on his own credit solely, in exclusion of the credit of the Lumber Company. An instruction withdrawing from the consideration of the jury, any evidence, however weak, tending to establish material facts, is calculated to mislead them, and is improper.—1 Brick Dig. 344, § 135 ; *Brown v. Newman*, 66 Ala. 275.

The fourth and fifth instructions proceed on the proposition, that *laches* on the part of the plaintiff in causing the drafts on Kilpatrick & Co. to be presented for payment, and in giving the defendant notice of their dishonor, discharged him from liability. Without discussing the truth of the proposition, if the defendant had been a party to the drafts—if he had endorsed them, or guaranteed their payment—they were transferred by delivery merely, if in the transfer the defendant had any agency. A creditor accepting a transfer of paper by mere delivery, as a conditional payment, or as collateral security, is bound to the use of due diligence in rendering it available. But the *laches* of the creditor in this respect, does not of itself, operate to discharge the transferror ; the *laches* must have caused loss or damage. 2. Dan. Neg. Ins., § 1278 ; Story on Bills, §§ 109, 305 ; *Russell v. Hester*, 10 Ala. 535 ; *Powell v. Henry*, 27 Ala. 612. The instructions pretermit the material inquiry, whether the *laches* imputed to the plaintiff, worked injury to the defendant, and were properly refused.— *Wood v. Brewer*, 66 Ala. 570.

The eighth instruction properly defined a discount, and should have been given.—*Youngblood v. Birmingham Trust and Sav. Co.*, 95 Ala. 521 ; *Saltmarsh v. P. & M. Bank*, 14 Ala. 668. The ninth instruction is subject to the objecction, that it was calculated to mislead the jury by diverting their attention from the consideration of the testimony that the drafts were by agreement of the parties taken only as conditional payment.

For the errors pointed out, let the judgment be reversed and the cause remanded.

Reversed and remanded.